GANGE LUMBER CO. *v.* ROWLEY AND DEPART-
MENT OF LABOR & INDUSTRIES OF THE
STATE OF WASHINGTON.

No. 53.   Argued October 16, 17, 1945.—Decided November 13, 1945.

Mr. *T. J. Hanify*, with whom *Messrs. John Ambler* and *L. B. Donley* were on the brief, for appellant.

Mr. *Harry Ellsworth Foster*, with whom *Smith Troy*, Attorney General of the State of Washington, was on the brief, for the Department of Labor & Industries; and *Mr. Charles R. Carey* for Rowley, appellees.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

This appeal is from a judgment of the Supreme Court of Washington rendered after the case journeyed twice through the state's appropriate administrative and judicial tribunals. 21 Wash. 2d 420, 22 Wash. 2d 250.[1] The judgment sustained an award made by the appellee, Department of Labor and Industries, in favor of Rowley, the individual appellee. The award was for compensation on account of the aggravation, by 1943, of injuries originally

---

[1] The procedure for making claims before the Department of Labor and Industries and for obtaining judicial review is sketched below in note 10. On the first journey of the cause to the Supreme Court, the Department and the Superior Court held that the claim was out of time and that it should be dismissed. After reversal of these rulings, the case was returned to the Department for the making of an award, and its order accomplishing this was affirmed by the Superior and Supreme Courts, as against appellant's constitutional objections urged here and others.

sustained by Rowley in 1937 in the course of his employment by appellant. A prior award for the original injury, made in 1938, became "final" [2] without appeal and is only indirectly in issue. Both awards were made pursuant to the state's statutory provisions for industrial insurance and were payable from a publicly administered fund maintained, as the statute required, by "premiums" or contributions of employers. [3] Appellant claims that the statute has been applied, in respect to its liability for the payment of premiums, in a manner to deprive it of property without due process of law, contrary to the prohibition of the Fourteenth Amendment.

The controversy results from a 1941 amendment of the Washington Industrial Insurance Act, [4] by which the time allowed for the beneficiary of an award to apply for additional compensation on account of aggravation of his injury was extended from three to five years after the establishment (or termination) of compensation or, by virtue of a proviso, to five years from the amendment's

---

[2] The award became final, for purposes of review, in so far as the amount of compensation allowable for the original injury as proved in that proceeding was concerned. But it was at all times subject to being reopened for the allowance of additional compensation on account of aggravation of the original injury taking place after the original award. See note 5; also notes 14, 15 and text.

[3] Washington's original Workmen's Compensation (or more properly Industrial Insurance) Act was adopted in 1911, Laws of Wash., 1911, c. 74 (Remington's Revised Statutes of Washington, §§ 7673 et seq.). For purposes material to the disposition of this cause, the Act was amended in 1927, by placing a limit of three years from specified dates upon the filing of claims by injured workmen for aggravation of injuries (Laws of Wash., 1927, c. 310, p. 844; Rem. Rev. Stat. Wash., 1932, § 7679 (h), amending Laws of 1911, c. 74, § 5 (h)) and in 1941 (effective December 3, 1942) by extending the three-year period to five years. Laws of Wash., 1941, c. 209, § 1; Rem. Rev. Stat. Wash., 1941 Supp., § 7679, amending subsection (h) of the 1927 amendment.

[4] See note 3.

effective date.[5] Since Rowley's application presently involved was made in time only by virtue of the proviso,[6] appellant asserts that the amendment has been applied retroactively to revive a claim barred by the preexisting law, to its substantial detriment; and thereby, under this Court's decision in *Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633, the claimed unconstitutional consequences have been created.

---

[5] The provision, as amended in 1941, was as follows: "If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director of labor and industries, through and by means of the division of industrial insurance, may, upon the application of the beneficiary, *made within five years after the establishment or termination of such compensation, or upon his own motion*, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: *Provided, Any such applicant whose compensation has heretofore been established or terminated shall have five years from the taking effect of this act within which to apply for such readjustment.*" Laws of Wash., 1941, c. 209, § 1; Rem. Rev. Stat. Wash., 1941 Supp., § 7679 (h). (Emphasis added.)

The 1927 amendment, see note 3, was identical except for use of the word "three" where "five" is employed. The original provision, in force from 1911 to 1927, was as follows: "If *aggravation, diminution, or termination* of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case *the department may, upon the application of the beneficiary or upon its own motion, readjust* for future application *the rate* of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments." Laws of Wash., 1911, c. 74, § 5 (h). (Emphasis added.)

[6] The original injury was incurred July 13, 1937. The original award, of $307.50, for permanent partial disability of the right hand, became "final," cf. note 2, March 9, 1938. The 1927 amendment, see notes 3 and 5, was in force at that time and until December 3, 1942, when the 1941 amendment became effective. Rowley's claim for aggravation was not filed until March 19, 1943, more than five years from the time the original award was "closed," but less than five years from the date the 1941 amendment, with the proviso, became effective.

Appellees have responded by relying upon *Campbell* v. *Holt,* 115 U. S. 620, and *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304. They have urged that as applied the statute has produced no unconstitutional injury or detriment to any substantive interest of appellant; and that the only effect has been to modify its procedural rights, in particular by supplying judicial review of awards for aggravation where previously only an administrative remedy was available to the employee.[7] As all of these contentions are somewhat interrelated, precise consideration requires more explicit statement of the statutory scheme in its application to the facts.

Washington's plan of industrial insurance is much like that of Ohio, briefly described in *Copperweld Steel Co.* v. *Industrial Commission,* 324 U. S. 780; cf. *Mattson* v. *Department of Labor,* 293 U. S. 151. The state Supreme Court has characterized the system as neither an employers' liability act nor an ordinary workmen's compensation act, but rather as an industrial insurance statute having all the features of an insurance act. *Stertz* v. *Industrial Insurance Commission,* 91 Wash. 588, 594–595, 158 P. 256. Salient characteristics, for present purposes, include the maintenance and administration by the state of an accident fund, which is paid into the state treasury by employers pursuant to annual assessments made by the Director of Labor and Industries, through the Supervisor of Industrial Insurance. Except in situations not presently material,[8] injured employees are deprived of common-law causes of action against their employers and are restricted to recovery from this fund as reparation for injuries sustained at work.

---

[7] Cf. note 18.

[8] E. g., the Act provides that an employer, defaulting in his payment of premiums, shall be liable to suit by the injured workman, as prior to 1911, but without specified defenses then available. Rem. Rev. Stat. Wash., § 7676.

The Director is empowered to promulgate, change and revise rates to be paid by employer contributors. The scheme for determining the rates is somewhat complicated, requiring classification of contributors and their work according to its hazard; and adjustment of premiums to take account of the cost experience not only of each class but also of each employer, as well as the condition of the fund. Rem. Rev. Stat. Wash., § 7676. A basic premium rate, to apply for the ensuing calendar year, is fixed annually for each class, which takes account of its cost experience over a two-year period and of the condition of the class fund. At the same time a premium rate of each employer is fixed with relation to each class, also to apply for the ensuing year, which takes into consideration the employer's average cost experience "for each workman hour reported by him during each fiscal year . . . over the five year period" immediately preceding the determination. The actual premium rate the employer is required to pay consists of 40 per cent of the basic rate plus 60 per cent of his cost rate as thus determined; but in no event is the total rate to exceed 160 per cent of the basic rate.

Premiums when paid are placed to the credit of the employer in the appropriate fund, but become the exclusive property of the state, earmarked and appropriated for the specific uses provided by the statute. Rem. Rev. Stat. Wash., § 7676. See *State ex rel. Trenholm* v. *Yelle,* 174 Wash. 547, 550. No provision is made for repayment or recovery of any employer's contribution once it is paid in, regardless of whether the full amount is required to compensate his or others' employees for injuries sustained; and no such repayments are contemplated. Awards are payable solely from the appropriate fund thus accumulated and payment is in no wise dependent upon the employer's continued existence, operation or contribution to the fund. Nor, under the plan, can payment affect the rate of premium for the year in which the award is allowed.

In view of these provisions and effects, the state Supreme Court has declared that neither the employer nor the employee has a vested right or interest in the fund; the moneys when collected are public moneys, held and administered by the state, albeit pursuant to the statutory purpose they constitute a "trust fund" for the benefit of injured workmen and their dependents.[9]  The fund is therefore in no sense the private property of the employer. Consequently the payment of awards out of the fund in itself could not amount to a deprivation of the employer's property.  Indeed, appellant does not urge that the application of moneys previously paid in to the payment of an award of itself works the claimed unconstitutional result.  Rather this is said to arise from the effect the award and its payment may have, by virtue of the statute's provisions relating to cost experience in the fixing of rates, upon appellant's liability for the payment of premiums in the future.  It is anticipated, not presently realized or immediate, financial injury of which complaint is made.

As has been noted, in computing the rate of premium the Director is required to take into account not only the cost experience of each class over a previous two-year period, but also the average cost experience of each employer over the immediately preceding five-year period, in addition to "the then condition of each class and/or sub-class account."  The quoted reference relates to the requirements for the keeping of class accounts, in the administration of the fund, for crediting of the payments

---

[9] See the opinion of the court upon the first appeal in this cause, 21 Wash. 2d 420, 427–429; *Mattson* v. *Department of Labor*, 176 Wash. 345, 347–348, 29 P. 2d 675, affirmed, 293 U. S. 151, holding that the 1927 amendment putting a limit of three years to the employee's right to claim compensation as of right impaired no vested right of the employee, whether of property or equal protection under the Fourteenth Amendment, or of contract under Article I, § 10, of the Federal Constitution, and authorities cited.

made by each employer to the appropriate accounts, and for the charging of awards made to or on account of injuries to his employees against his experience. Rem. Rev. Stat. Wash., § 7676. It is this charge of which appellant complains, in the view apparently that it necessarily will entail the payment of a higher premium in years following the one in which the award is made, when the rate computed as the statute requires will reflect inclusion of the award in its cost experience. Accordingly, since it determines that the charge will be made, the allowance of an award is said to be a matter vitally affecting the employer's substantive liability and constitutes a final adjudication of that liability to the extent that the charge may affect the future rate.

Moreover, the statute provides in its procedural phases for the employer to have notice and the right to participate fully in the determination.[10] It must be taken that this right is conferred for the employer's protection in the fixing of rates as they may be affected by the allowance of awards through the inclusion of his cost experience as a factor in rate computation. Especially in view of these

---

[10] Report of accident and claim for compensation must be filed with the appellee Department of Labor and Industries. If either the claimant or the employer is aggrieved by any order, decision or award, he may petition for rehearing before the Joint Board of the Department. If rehearing is granted, the board may receive testimony. Appeal lies from the board's order to the Superior Court, where the matter is triable *de novo*, but upon the record made before the board, and from the Superior Court's judgment to the Supreme Court. Rem. Rev. Stat. Wash., § 7686; (1943 Supp.) § 7697.

No complaint is made that appellant did not have full benefit of the Act's procedural protections.

Although the Act does not provide specifically for the employer to contest the validity of an award at the time the Department is fixing the rate for the ensuing year or when he is called upon to pay that premium, it does not appear affirmatively that he may not have remedy then under the general law of the state. Cf. *Copperweld Steel Co.* v. *Industrial Commission*, 324 U. S. 780.

procedural protections, appellant urges that its substantive liability, once it is terminated through barring of a claimant's right to proceed by lapse of time, becomes an adjudicated matter, substantive, not merely procedural or remedial in character; and cannot therefore be revived consistently with the decision in the *Danzer* case.

Were this all, and were the state of the record plain that the allowance of the award necessarily would result in a later increase of the premium, we would be confronted with the necessity of determining whether such an increase would constitute the kind of injury or detriment forbidden by the due process clause. A mere increase in premium, under a compulsory and publicly administered accident insurance plan, designed to operate at cost based upon general and individual experience rather than at an arbitrary figure,[11] and surrounded with adequate procedural safeguards against arbitrary action, would not seem to be so obviously harsh or arbitrary in its effect upon employers generally that it could be said without question to be beyond the scope of the state's regulatory power or in violation of the due process prohibition of the federal Constitution.

But we are not faced with the necessity for deciding that question. Although appellant's brief states that "the award will be paid in large measure" by itself, it is not

---

[11] The original act, as adopted in 1911, provided for a uniform rate of premium to be collected from all employers. Laws of Wash., 1911, c. 74, § 4. The cost feature based upon experience was introduced in 1931. Laws of Wash., 1931, c. 104, § 1.

The original act with its feature of "uniform payment" was held constitutional by this Court in *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, affirming *State* v. *Mountain Timber Co.,* 75 Wash. 581, 135 P. 645. See also *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 117 P. 1101. The "cost experience" amendment was said to be valid in *State ex rel. Crabb* v. *Olinger,* 196 Wash. 308, 82 P. 2d 865, overruled on another point in *St. Paul & Tacoma Lumber Co.* v. *Department of Labor,* 19 Wash. 2d 639, 649, 144 P. 2d 250.

asserted that this burden will result from any increase in appellant's rate or in fact that any increase necessarily will follow from allowance and payment of the award. On the contrary, the statement seems obviously irrelevant, or erroneous in so far as it may be taken to imply that either of these consequences will follow, since in no event can the award be paid out of the funds collected from an increase produced wholly or in part by its allowance. It is not until after the award has been allowed that it can be charged to the employer's experience or affect his rate of contribution.

Moreover, if appellant is taken to argue that an increase will result for the year or years following the award's allowance, the record neither demonstrates this nor furnishes support for an inference that such a result necessarily or even probably will follow. As the Department points out, the payment when made may be one factor in determining appellant's future rate. But the record does not disclose what rate appellant has been paying. For all that appears, this may be the maximum permitted by the statute, in which event no injury, present or future, could result from allowance and payment of the award.[12] Moreover, if it were assumed that the rate was less than the maximum, whether or not an increase would result or, if so, whether it would be substantial, are questions wholly speculative.

A variety of considerations makes them so. Appellant's experience is but one factor in the computation. It affects only 60 per cent of the actual rate. A single award is reflected in this fraction only as it affects the five-year individual average. When so reflected the amount of resulting increase in that average and in the fraction may be infinitesimal or insubstantial. The ultimate effect upon

---

[12] Except possibly upon the contingency, equally speculative upon the record, that the maximum rate might be reduced in case the charge resulting from the award were not made.

the actual rate will be watered down nearly by half through inclusion of the 40 per cent factor for class experience. Since the condition of the fund also must be considered, this too may minimize further the effect or, so far as appears, make an increase entirely unnecessary. The record furnishes no evidence concerning the condition of the fund, the class experience over the required period or the appellant's individual experience over the specified five years. The amount of the award is small, $460.50.

In sum, all that the record discloses is that this amount will be charged against the appellant's experience and taken into account with other factors, as the statute requires, in the computation for some future period, with possibly some increase resulting in the rate. But, in the absence of all evidence showing the facts concerning the other factors, it is entirely problematical whether an increase will follow or, if so, whether it will be wholly mathematical and infinitesimal or substantial in its ultimate effect upon appellant. This being so, appellant's complaint comes down, on the record, to nothing more than the bare possibility of some injury in the future.

The Fourteenth Amendment, through the due process clause, does not assure protection from the states' regulatory powers against injuries so remote, contingent and speculative.[13] Some substantial and more immediate harm must be shown to present a justiciable question concerning the state's power. The injury, as it appears from this record, is neither so certain nor so substantial as to justify a finding, upon that showing, that appellant's substantial rights have been or will be invaded by allowance and payment of the award.

---

[13] Cf. *Mallinckrodt Chemical Works* v. *Missouri ex rel. Jones*, 238 U. S. 41, 54; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544–545, and authorities cited. Cf. also *Castillo* v. *McConnico*, 168 U. S. 674, 680; *Tyler* v. *Judges of the Court of Registration*, 179 U. S. 405; *Frothingham* v. *Mellon*, 262 U. S. 447, 488.

Moreover, under the Act's procedural provisions, appellant has at no time been free from this contingent liability, whether before or after the 1941 amendment. For, although the 1927 amendment precluded the employee from filing claim as of right after the three-year period, it followed the original act in placing no limit upon the time within which the Department, of its own motion, might reopen the claim and increase, reduce or terminate the compensation.[14] Appellant therefore was at all times substantively liable to have its premium rate increased by the allowance of an award for aggravation; and the initial award, in consequence, was in no sense *res judicata* against later imposition of this liability.[15] Appellant's contrary argument erroneously correlates its own liability to pay

[14] See the terms of subsection (h) in its original and amended forms as set forth in note 5; *Smith* v. *Department of Labor,* 8 Wash. 2d 587, 113 P. 2d 57; cf. note 15.

[15] It was exactly to prevent such rigid finality that the statute preserved both the Department's unlimited power to reopen the case and the employee's power to have it reopened as a matter of right during the limited period. From the beginning the Act seems to have been drawn to avoid the crystallizing effects of the doctrine of *res judicata* in relation to awards, whether as against the employer or the employee. The idea apparently was that the initial award for an injury would afford compensation for harms then apparent and proved. But it was recognized, on the one hand, that all harmful consequences might not have become apparent at that time and, on the other, that harms then shown to exist might later be terminated or minimized. Cf. *Choctaw Portland Cement Co.* v. *Lamb,* 79 Okla. 109, 110, 189 P. 750. The purpose of the provisions for reopening, whether at the instance of the employer, the employee, or the Department, cf. notes 5 and 14, obviously was to prevent the initial award from finally cutting off power to take account of these later frequent developments. It was to maintain a mobile system, capable of adapting the amount of compensation from time to time in accordance with the facts relating to the injurious consequences for disability as they actually develop, not to cut off rigidly the power either to increase or to decrease the compensation once an award had become "final" for purposes of appeal.

premiums, for purposes of applying the statute's bar, with the employee's right formally to institute the proceedings (and to have judicial review) for securing an award, and assumes that this liability was terminated.[16]

It is true that the restoration, by the 1941 amendment, of the employee's right of taking the initiative may have had practical effects toward increasing the rates of premium, although none are shown by this record with any certainty. But appellant is seeking to have a state statute voided on the ground that it works a substantial injury to its substantive rights by creating or recreating a liability which had been extinguished by previously applicable law. It thereby has undertaken to demonstrate not only the injury and its substantial character, but as part of that burden the extinction of the preexisting substantive liability. This it has not done and could not do, in view of the Department's power to reopen the claim. It has succeeded only in showing that one mode provided by the preexisting law for bringing the liability into play had been terminated. It was this and only this which the 1941 amendment revived. At the most, therefore, appellant's injury, if it were otherwise more substantial, would consist in the restoration of an alternative, if also possibly a more effective, method for putting in motion the machinery provided for making an award.

In our view appellant has not made the showing of substantial harm, actual or impending, to any legally protected interest which is necessary to call in question the

---

[16] Obviously the liability and the right were not coextensive in duration, since the one continued after the other had been cut off. They were lacking also in correlation of obligation, since the employer was bound to pay the fund, not the employee; and the latter recovered from the fund, not the employer. Right and liability are usually correlative in a legal relation. But in this instance the correlation, as appellant poses it, is lacking; for two legal relations are involved, from each of which it seeks to extract a correlative.

statute's validity.[17]  Accordingly, the appeal must be and hereby is

*Dismissed.*[18]

MR. JUSTICE BLACK is of the opinion that the only practical effect of the challenged state statute was to give to an injured employee a right to judicial review of an administrative action; that a contention that such a statute violates the Federal Constitution is frivolous; and that the appeal should be dismissed for that reason.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BURTON concurs.

We cannot agree that the injury to appellant is so remote and speculative as to preclude it from attacking on constitutional grounds the award in question.  The award, whether small or great, enters into the employer's cost experience; and the future premium payable by the employer reflects in part any increase or decrease in his cost experience.  If the employer is not paying the maximum rate, an increase in his cost experience will inevitably make

---

[17] Cf. *Mattson* v. *Department of Labor*, 293 U. S. 151.

[18] Appellees have urged that the 1941 amendment did no more than restore the right of judicial review, as to claims filed after the three-year period, which prior to 1927 had existed with reference to all claims for aggravation without limitation as to time; and therefore the amendment could be taken in no way to violate any provision of the Constitution.  It is true that the 1941 amendment restored the employee's right of judicial review where previously none had existed.  But it accomplished more.  It invested the employee with the right to require the Department itself to proceed, where previously no such right existed.  Whether or not this would give cause for complaint, if the right were coupled with a more substantial and less contingent injury than is shown to exist in this case and with a previous total extinction of the employer's liability, need not be determined.

him pay a rate which would be lower but for the increase in his cost experience. And if, perchance, he is already paying the maximum rate, an increase in his cost experience will inevitably hold him there longer or lessen any reduction to which he otherwise would be entitled. The precise effect on future rates cannot, of course, be presently ascertained. Nor could it be shown in any case, whether the award was $460 or $46,000. For the rates are fixed annually and at the time of any one award all of the elements entering into the future computation will not be known. So if this employer is barred here because he can show no injury, he and all other employers will be barred in every case.[1] Yet we know from the operation of the system that the cost experience of each employer determines 60 per cent of his future rate. Their respective costs also affect to a lesser degree the basic premium rate applicable to each employer's class, and 40 per cent of that basic rate is reflected in the actual premium rate paid by each employer in that class. We might as well say that no employer could ever challenge the constitutionality of an award under this system because bankruptcy, fire or some cataclysm might put him out of business before a new rate is fixed.

On the merits we think *Campbell* v. *Holt*, 115 U. S. 620, and *Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, govern this case. At no time was the employee's claim for aggravation extinguished. At all times the Department could have reopened the claim and made an additional award. We therefore do not reach the question of

---

[1] We are not advised that the employer can contest the validity of a prior award at the time the Department of Labor and Industries is fixing the premium rate to be paid into the fund for the ensuing year. The pertinent statute (Rem. Rev. Stat. § 7676) does not prescribe such a remedy and the decision of the Washington Supreme Court in *Mud Bay Logging Co.* v. *Department of Labor*, 189 Wash. 285, 286, 64 P. 2d 1054, would seem to indicate that it is not contemplated.

the constitutionality of an act which makes it possible to enlarge an award where previously there had been a final adjudication of the claim. Cf. *Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633.

We would affirm the judgment.