**RAILWAY EXPRESS AGENCY, Inc.**
**v. KENNEDY et al.**

No. 10317.

United States Court of Appeals
Seventh Circuit.

June 5, 1951.

Douglas F. Smith, Howard P. Robinson, John R. Taylor, Arthur R. Seder, Jr., all of Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellant.

Milton Kramer, Lester P. Schoene and Schoene & Kramer, all of Washington, D. C., for amici curiæ.

Myles F. Gibbons, General Counsel, Railroad Retirement Board, and David B. Schreiber, Associate General Counsel, Railroad Retirement Board, Chicago, Ill., Paul M. Johnson, Edward E. Reilly, Asst. General Counsels, Chicago, Ill., Railroad Retirement Board, of counsel, for appellees Kennedy and Harper.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from an order of the District Court dismissing plaintiff's petition for an injunction and for other incidental relief against the defendants individually and as members of the Railroad

Retirement Board. There is in effect a temporary injunction pending the final decision of this appeal.

The plaintiff seeks to enforce its view of the provisions of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 354(a–2) (iii), that unemployment compensation shall not be paid to workers for unemployment caused by a strike "commenced in violation of the provisions of" the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The Board has already paid such compensation in excess of $90,000 to 2300 of plaintiff's employees for one 14 day period and intends, unless enjoined from doing so, to pay said employees $38,-103.75 for a second period.

The strike involved plaintiff's employees who were members of two locals of the Teamsters' Union in the New York metropolitan area. On June 1, 1950, the unions representing the employees here involved submitted to plaintiff demands for a new union contract. Thereafter, for a period of several weeks the plaintiff and representatives of the unions engaged in negotiations for a new agreement. On September 21, negotiations having broken down, the plaintiff sought the intervention and services of the National Mediation Board. On the following day, September 22, the Mediation Board notified the parties that its services had been invoked. On the next day, September 23, the employees went out on a strike, which continued to and including October 20, 1950. In the meantime, on October 3, a Presidential Emergency Board was created to investigate and report concerning the dispute.

The plaintiff argues that the Railway Labor Act requires that the employees, as well as the employer, cooperate in the several steps outlined in that Act before resort can be had to a strike. Plaintiff further argues that under the provisions of the Railway Labor Act the strike here definitely became illegal upon the appointment of the Emergency Board.

The District Court assigned, among others, the following reasons for dismissing the complaint:

(1) The United States is the owner of the fund, and the plaintiff has no such interest as gives it the right to sue;

(2) The Statute makes the decisions of the Board final, except as to appeals provided for objecting employees; and

(3) Carriers have no right of appeal from the decisions of the Board.

If the plaintiff has such an interest in the fund as to give it a standing to sue, it must show that the action of the Board in allowing compensation claims is subject to judicial review on the complaint of a carrier. The plaintiff in its complaint admits, however, that "There is no provision in the Railroad Unemployment Insurance Act nor any other act of Congress, whereby this plaintiff or any other employer similarly situated can effect an appeal to any competent court from any decision of the Board."

The Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(b) expressly authorizes the Board "to make findings of fact with respect to any claim for benefits and to make decisions as to the right of any claimant to benefits." Subsection (c) of this section, after providing for reviews of the initial action on claims by the Board and for notification of the interested parties, states that:

"Subject only to such review [the review provided for by subsection (f) of this section], the decision of the Board upon all issues determined in such decision shall be final and conclusive for all purposes and shall conclusively establish all rights and obligations, arising under this chapter, of every party notified as hereinabove provided of his right to participate in the proceedings.

"Any issue determinable pursuant to this subsection and subsection (f) of this section shall not be determined in any manner other than pursuant to this subsection and subsection (f) of this section."

Subsection (f) of this section provides for judicial review by the U. S. Court of Appeals only of decisions of the Board, (1) denying claims in whole or in part, on the petition of the claimant or of the

labor organization of which claimant is a member, and (2) granting claims where the Board has found claimant to be an employee of an employer which denies such relationship.

Subsection (g) of this section then repeats that: "Findings of fact and conclusions of law of the Board in the determination of any claim for benefits or refund * * * shall be, except as provided in subsection (f) of this section, binding and conclusive for all purposes and upon all persons, * * * and shall not be subject to review in any manner other than that set forth in subsection (f) of this section."

■ A careful consideration of all of these sections of the Act convinces us that Congress intended to grant a judicial review of the decisions of the Board on claims for compensation where the employee status was not denied by the carrier, only to employees whose claims to compensation have been disallowed in whole or in part.

■ Nor do we believe the plaintiff can maintain an action under the Federal Administrative Procedure Act. Section 10 of that Act, 5 U.S.C.A. § 1009, provides that: "Except so far as (1) statutes preclude judicial review", any person suffering legal wrong or adversely affected or aggrieved. by agency actions shall be entitled to judicial review thereof.

Since the Railroad Unemployment Insurance Act does preclude judicial review of the decision of the Board in the instant case on the petition of a carrier, it follows that the carrier is given no right to such judicial review by the Administrative Procedure Act.

■ If, however, we assume, *arguendo,* that the Railroad Unemployment Insurance Act does not preclude the judicial review sought by the carrier here, the plaintiff, in order to have a standing to sue, must show that it has sufficient interest in the Unemployment Fund to be a "person suffering legal wrong, or adversely affected or aggrieved" by the action of the Board in granting these claims. It is not sufficient that plaintiff as a member of the public

desires a law to be correctly administered. The contributions exacted from the carriers here constitute a type of tax. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, and Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245. It has been many times held that a taxpayer of federal taxes has no standing to sue to prevent the expenditure of federal funds under a statute which he claims to be unconstitutional, even though such expenditure might possibly result in an increase in the taxes which he will eventually be compelled to pay. Commonwealth of Massachusetts v. Mellon (Frothingham v. Mellon) 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. In these cases the Supreme Court said, 262 U.S. at page 487, 43 S.Ct. at page 601: "The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained."

The plaintiff has cited several state unemployment cases as authorities supporting its contention in the instant case. In those cases, however, the contribution rate of the employer was based by statute on the unemployment experience of the business of the employer.

A case presenting a situation more nearly like the situation we have in the present case is Gange Lumber Co. v. Rowley, 326 U.S. 295, 66 S.Ct. 125, 90 L.Ed. 85. There the State Legislature of Washington in 1941, by an amendment of its Industrial Insurance Act, so extended the time within which an injured employee might file a

claim for readjustment on account of aggravation of injury as to make it possible for appellant's employee, Rowley, against whom the original three year limitation had run prior to 1941, to file and recover an award for the aggravation of an injury. The United States Supreme Court there, 326 U.S. at page 299, 66 S.Ct. at page 127, characterized the system set up by the State of Washington as being "neither an employers' liability act nor an ordinary workmen's compensation act, but rather as an industrial insurance statute having all the features of an insurance act." The system there included the maintenance and administration by the state of an accident fund which was paid into the treasury by employers pursuant to annual assessments made by the Director of Labor and Industry, through the Supervisor of Industrial Insurance. There the Director was empowered to promulgate changes and revise rates to be paid by employer contributors. The basic rate to apply for each year was fixed annually for each class of employers and took into account its cost experience over a two year period and the condition of the class fund. At the same time a premium rate for each employer was fixed with relation to the class, which took into consideration the 'employer's average cost experience calculated over a five year period immediately preceding the determination. There as here the premiums when paid by the employer were placed to the credit of the employer in the appropriate fund but became the exclusive property of the state, ear-marked and appropriated for the specific purpose provided by the statute. There as here the appellant did not claim that payment out of the fund works the claimed unconstitutional results, but rather claimed that the effect of the award and its payment would affect its cost experience and might result in its being required in the future to pay increased rates. The court there said that under the facts of that case the appellant's complaint amounts to nothing more than the bare possibility of some injury in the future. The court then said, 326 U.S. at page 305, 66 S.Ct. at page 130: "The Fourteenth Amendment, through the due process clause, does not assure protection from the states' regulatory powers against injuries so remote, contingent and speculative. Some substantial and more immediate harm must be shown to present a justiciable question concerning the state's power. The injury, as it appears from this record, is neither so certain nor so substantial as to justify a finding, upon that showing, that appellant's substantial rights have been or will be invaded by allowance and payment of the award."

In the instant case also the injury of which the plaintiff is complaining is only a future possibility. The record shows that the balance in the fund as of September 30, 1950, was slightly in excess of 779 million dollars. All common carriers of the United States covered by the Act are required to pay one-half of one percent of the compensation of each employee, not in excess of 300 dollars per month. The rate payable by all of these carriers increases by one-half of one percent for each 50 million dollars that the account falls below 450 million dollars. The Act, 45 U.S.C.A. § 358, provides that on or before December 31st each year the balance in the fund as of September 30th of that year shall be determined. According to that determination the rates of carrier contributions for the ensuing calendar year shall be fixed and collected. The individual claims here in question were comparatively small. Their payment could not possibly affect the rate of contribution by the carriers for the current years. Congress could change the rate at any time. The condition of the fund and the resulting rate of contribution might also be affected by either a general depression or by a general boom in business.

Here as in Gange Lumber Co., supra, the appellant "has not made the showing of substantial harm, actual or impending, to any legally protected interest" such as to make it an "aggrieved" party entitled to a judicial review of the Board's action under 45 U.S.C.A. § 355(f).

The order of the District Court in dismissing the complaint is affirmed.