OLLIE RICHARD COOPER *v.* WICOMICO COUNTY,
DEPARTMENT OF PUBLIC WORKS ET AL.

[No. 65, September Term, 1978.]

*Decided March 12, 1979.*

*Don E. Richardson,* with whom were *Kenneth V. Heland* and *Richardson, Anderson & Heland* on the brief, for appellant.

*Theodore B. Cornblatt* and *Alfred M. Porth,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court. ELDRIDGE and COLE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which COLE, J., concurs at page 584 *infra*.

In *Cooper v. Wicomico County,* 278 Md. 596, 366 A. 2d 55 (1976) (*Cooper I*) we were asked to determine whether a supplemental award of workmen's compensation to the appellant Cooper, which increased the amounts payable to him under a prior award for permanent total disability, unconstitutionally disturbed the contractual or other vested rights of the appellees — Cooper's employer and the employer's insurer. Because of deficiencies in the record, we remanded the case for further proceedings under Maryland Rule 871, including the taking of additional testimony. Further proceedings having been conducted in accordance with our mandate, the issue raised in *Cooper I* is once again before us, this time on a record adequate to permit adjudication of the question.

The pertinent facts, as outlined in *Cooper I,* disclose that on February 7, 1969, Cooper sustained an accidental injury in the course of his employment with Wicomico County. On March 17, 1971, the Commission found Cooper to be totally and permanently disabled and ordered that he be paid compensation at the rate of $45.33 per week, not to exceed $30,000 in total, the maximum payable at that time under Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 36 (1) (a). By Chapter 832 of the Acts of 1973 the General Assembly added new subsection (10) to § 36; it provided in pertinent part that any employee permanently and totally disabled as a result of any injury suffered before July 1, 1973, and after July 1, 1965, who, on July 1, 1973, was receiving benefits for permanent and total disability "shall be entitled to a supplemental allowance of compensation as calculated under paragraph (b) . . . [to] continue only for the number of weeks that the employee is entitled to receive benefits under his original award." Paragraph (b) of § 36 (10) directed how the additional allowances were to be calculated; the result in this case, under the order of the Workmen's Compensation Commission of August 1, 1973 requiring the appellees to comply with the mandate of ch. 832, was to increase the

weekly payments to Cooper from $45.33 to $57.96 and the limit of the total payable from $30,000 to $38,397.

Chapter 832 also amended § 66 (1) of Art. 101 of the Code to provide that "Whenever the State Accident Fund, insurance carrier or self-insured employer makes a supplemental allowance payment under § 36 (10) of this article, he shall be reimbursed from the Subsequent Injury Fund [annually by payment made by the State Treasurer]." The Fund was created by ch. 637 of the Acts of 1945 to pay previously disabled or injured employees who sustain a subsequent injury which is not of itself disabling but which, coupled with the prior impairment, renders the employee permanently disabled. *See Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A. 2d 506 (1968). The primary sources of monies for the Fund are payments by employers, insurance carriers and the State Accident Fund of a percentage (originally 1%, now 5%) "on all awards rendered against such employer . . . for permanent disability and death" and interest earned on the Fund from investments. Art. 101, § 66 (2). Whenever the Fund equals or exceeds $1,000,000, no further contributions are required but when the Fund is reduced below $500,000, or the Commission determines that payments from the Fund in the next three months will probably cause it to go below $500,000, contributions must be resumed until the Fund again reaches $1,000,000. § 66 (4).

The insurer and employer appealed the award of supplemental benefits to Cooper, claiming that ch. 832 was unconstitutional and invalid. The Circuit Court for Wicomico County agreed; it concluded that ch. 832 could not constitutionally be applied retrospectively since to do so would divest or otherwise adversely affect contractual or other vested rights of the appellees by increasing their obligation under the basic award to pay the maximum fixed by the law at the time of the injury. After Cooper appealed from that judgment, we granted certiorari prior to decision by the Court of Special Appeals. We said in *Cooper I,* 278 Md. at 598-99, that:

"[T]he lower court was correct if the operational effect of ch. 832 requires an employer or insurer to

pay more than it was required to pay under the law in effect at the time of the injury. It is generally held that the basis of a compensation award is contractual and that the amount payable thereunder by an employer or insurer cannot be increased retrospectively."

We considered the pertinent case authority, including decisions of the Supreme Court, and concluded that to give effect to a legislative enactment increasing the amount payable to an employee to a sum greater than that payable at the time of the injury would impermissibly alter a substantial term of an existing contract between an employer and an employee (and derivatively to an insurer). 278 Md. at 600.

In view of the reimbursement provisions of ch. 832, we were unable to determine whether any substantial vested right of either appellee was divested or any obligation either had was substantially increased. In resolving that question we deemed it essential to consider the principles set forth by the United States Supreme Court in *Gange Lumber Co. v. Rowley,* 326 U. S. 295, 66 S. Ct. 125, 90 L. Ed. 85 (1945). That case involved a Washington statute which was described as neither an employers' liability act nor an ordinary workmen's compensation law, but rather as an industrial insurance statute "having all the features of an insurance act" (a characterization applicable to the Subsequent Injury Fund).

The Washington statute provided a state fund created by annual assessments on employers. Awards were paid solely from the fund and neither the employer nor the employee had a vested interest in the fund because "the moneys when collected are public moneys, held and administered by the state, albeit pursuant to the statutory purpose they constitute a 'trust fund' for the benefit of injured workmen and their dependents." 326 U. S. at 301. The controversy in *Gange Lumber* stemmed from a Washington statute which increased the time within which an employee could apply for additional compensation for an injury for which a prior final award had been made. The employee applied after limitations had expired under the former law but within the period set by the

new statute and was awarded additional compensation. The employer asserted that the amendment had been applied retroactively to its substantial detriment and that its constitutional rights had been violated.

The Supreme Court rejected the employer's claim of unconstitutionality on the ground that no substantial injury had been shown on the record by the employer. It said that although the employer claimed that it would have to pay the award, "it is not asserted that this burden will result from an increase in appellant's rate or in fact that any increase necessarily will follow from allowance and payment of the award." 326 U.S. at 303-04. The Court said further, *id.* at 305, that "in the absence of all evidence showing the facts concerning the other factors, it is entirely problematical whether an increase will follow or, if so, whether it will be wholly mathematical and infinitesimal or substantial in its ultimate effect upon the appellant. This being so, appellant's complaint comes down, on the record, to nothing more than the bare possibility of some injury in the future."

In view of *Gange Lumber,* we concluded that the record did not contain sufficient evidence from which to determine whether the appellees suffered any substantial injury from the operation of the challenged statute. We thus remanded the case under Rule 871 for the introduction of evidence as to whether ch. 832 "read with other pertinent parts of the workmen's compensation law requires the insurer to pay the annual assessment on the monies they temporarily pay out [under the statute] ... [a]nd whether the supplemental payments required to be made under ch. 832 will so deplete the Fund as to require that additional assessments be made ...." 278 Md. at 603.

The trial following our remand was held on April 17, 1978. Based on the evidence adduced at that time, the circuit court (Simpkins, J.) held that the appellees were unconstitutionally affected by the provisions of ch. 832 because the supplemental allowances which they paid under the statute caused the balance of the Subsequent Injury Fund to remain below the $1,000,000 assessment cutoff level, thus requiring

the appellee insurer to continue to pay the 5% assessment on original awards under § 66 (2).[1] Cooper again appealed and we granted certiorari prior to decision by the Court of Special Appeals.

Cooper contends that the evidence was insufficient to show the extent, if any, of the injury actually caused the appellees by the supplemental allowance payments. He argues that, at best, the testimony generally indicated that the Fund was being continually depleted by both supplemental allowance payments and payments to regular subsequent injury claimants. Cooper maintains that no inference can be drawn from the evidence that the payment of the supplemental allowances, standing alone, necessitated continuation of the 5% assessment on original awards.

As heretofore indicated, § 66 (4) provides that the 5% assessment levied against insurers terminates when the Fund equals or exceeds $1,000,000. The appellees undertook to prove that they suffered substantial injury from the operation of ch. 832 on the sole ground that the $1,000,000 cutoff level was not reached because the supplemental allowance payments required by the statute so depleted the Fund that the 5% assessment had to be continued on an uninterrupted basis. The testimonial and documentary evidence adduced by the appellees showed that, absent the requirement for payment of supplemental allowances under § 36 (10), the Fund would have equalled or exceeded $1,000,000 by July 1, 1976. This result was demonstrated by showing that supplemental allowance benefits paid from the Fund through December 31, 1975 totalled $405,972, and that this figure, added to the July 1, 1976 Fund balance of $655,061, would have produced a balance at that time of $1,061,033. The evidence also showed that the Fund would have remained over the $1,000,000 level in 1977 had there been no obligation to pay the supplemental allowances. Evidence was submitted that the appellee insurer paid the 5% assessment on original awards in 1976 and 1977, amounting, respectively, to $71,933 and $61,779; and that had the Fund equalled or exceeded $1,000,000 on either or both of those

---

1. The evidence showed that the appellees were not required to pay the 5% assessment on the amount of the supplemental allowance payments.

years, the assessments would not have been imposed. Evidence was introduced that in 1976 and 1977, $118,422 and $140,766, respectively, were paid from the Fund in supplemental allowances. There was evidence establishing that from 1973 through 1977, supplemental allowances totalling $665,160 were paid from the Fund, constituting 11.85% of the total of all payments made from the Fund during these years. It was shown that from July 1, 1975 to June 30, 1976, the 5% assessment on insurers amounted to $1,614,426 and that Fund disbursements equalled $1,531,790. From July 1, 1976 to June 30, 1977, the assessments amounted to $1,641,441 and disbursements were made of $1,490,109. The assessment rate, originally 1%, increased to 3% in 1973 and to 5% in 1974 to maintain the solvency of the Fund which, according to the testimony of the Chairman of the Workmen's Compensation Fund Board, faced rapid depletion as a result of higher compensation rates and reimbursement of supplemental allowances.

We think the operational effect of ch. 832 requires insurers (and hence employers) to make payments for supplemental allowance benefits, which are not ultimately reimbursed, in amounts sufficient to constitute a substantial injury to constitutionally protected vested rights.

It is true, of course, as the dissent in *Cooper I* indicates, that all workmen's compensation insurers, and not just those paying supplemental allowances, are required to make the 5% contributions to the Fund, thus spreading the increased costs among all insurers. But this case is not like *Gange Lumber,* where the evidence showed that only a speculative or remote possibility existed that an increase in the employer's rate of premium or contribution would be required to fund the additional cost necessitated by the statutory enactment there involved. In that case, the formula for rate determination was based on cost experience and included a basic premium for each employee class and a separate premium rate for each employer, not to exceed a fixed maximum. Under that statute, benefit payments would affect the employer's rate of premium if at all for a year or years following the award based on cost experience, so that no immediate or presently

realized financial injury was involved. It was in this context that the Court said that if the record showed that the allowance of the award would result in a later increase of the premium, it would be necessary to determine "whether such an increase would constitute the kind of injury or detriment forbidden by the due process clause." 326 U. S. at 303. Immediately following that statement was a further statement by the Court that "[a] mere increase in premium" to finance the program, which was "designed to operate at cost based upon general and individual experience rather than at an arbitrary figure," would not necessarily be beyond the scope of the State's regulatory power or in violation of the due process prohibition of the federal constitution. *Id.* at 303. The Court noted, however, that it was not required to decide that question because the employer did not assert that the additional award would cause any increase in its rate of premium, or that any increase would follow from the allowance and payment of the award. It said that only after an award has been allowed may it be charged under the statute to the employer's cost experience or affect his rate of contribution; and then it is only one factor in the final computation in determining the employer's future rate, and may not, therefore, result in any increase whatever or in an increase so infinitesimal as not to be of constitutional dimension.

Payment of the supplemental allowances mandated by ch. 832 involves more than, as in *Gange Lumber,* "a mere increase in premium" not shown by evidence to result in financial injury to the employer. The 5% assessment on all insurers to provide monies to maintain the Fund's ability to meet its obligations, including supplemental allowance benefits, is essential to the Fund's solvency. That almost 12% of Fund monies was expended for supplemental allowance demonstrates the substantiality of the drain on the Fund's resources accountable to the provisions of ch. 832, as well as to the necessity that the 5% assessments be levied to assure a continuing source of funds to pay the awards. Notwithstanding the reimbursement provisions of the statute, the financial injury to the appellees cannot properly

be characterized as speculative, remote or negligible. On the contrary, as shown by the evidence, the appellee insurer was required in 1976 and 1977 to pay out a total of $133,712, which would not have been levied against it had supplemental allowance payments not been compelled by ch. 832. The reimbursement of these allowances from the Fund is, of course, of monies contributed by insurers in the first instance, contributions which are both immediate and substantial.

It may be, as the dissent in *Cooper I* suggests, that the purpose of ch. 832 is to alleviate the effects of inflation which rendered future payments under prior compensation awards totally inadequate to meet an employee's needs. Whether such a governmental objective may be implemented in conformity with the due process requirements depends, of course, upon the provisions of the enactment and the underlying circumstances. However, simply to increase the amount of a previously finalized award of compensation to meet the employee's "generalized need for funds" would appear to rest on a tenuous constitutional foundation. *See Usery v. Turner Elkhorn Mining Co.,* 428 U. S. 1, 19, 96 S. Ct. 2882, 49 L.Ed.2d 752 (1976).

Because the evidence in this case shows that ch. 832 unconstitutionally affects the appellees' contractual and other vested rights, the lower court correctly concluded that the supplemental award of compensation to Cooper cannot be sustained.

*Judgment affirmed, with costs.*

*Eldridge, J., dissenting*:

When this case was previously before the Court, Judge Levine and I dissented from the order remanding the case for further proceedings. We took the position that even if the effect of the supplemental allowance provision of Ch. 832 of the Acts of 1973, Maryland Code (1957, 1964 Repl. Vol., 1978 Cum. Supp.), Art. 101, § 36 (10), were to cause some additional payments to the Subsequent Injury Fund by insurance carriers or self-insured employers, this would not

make the statute unconstitutional. *Cooper v. Wicomico County,* 278 Md. 596, 604, 366 A. 2d 55, 60 (1976). I continue to adhere to that position and thus would reverse.

The law creating the Subsequent Injury Fund provides for a mandatory compensation plan administered by the State and supported by an assessment on all insurers or employers based on prior awards against them. When the Fund becomes impaired, requiring additional payments, all insurers or self-insured employers, and not only the appellees, are required to make the additional payments. Payments to the Fund are in the nature of a general tax assessed against members of a certain group to cover expenses of administering a government program involving that group. The fact that the Legislature may choose to increase the benefits of the program in order to alleviate the severe harm from continuing inflation, having the effect of increasing the amount of contributions due from *all* insurers or employers, does not constitute a deprivation of any constitutional right of the employer. *See Allied American Co. v. Comm'r,* 219 Md. 607, 150 A. 2d 421 (1959).

A similar legislative program, including supplemental payments to those already receiving workmen's compensation benefits and providing for reimbursement from a Second Injury and Contingency Fund with funds generated by an additional tax on employers and insurance carriers, was held by the Supreme Court of Delaware not to violate either the Contract Clause or the Due Process Clause in *Price v. All American Engineering Company,* 320 A. 2d 336 (Del. 1974). *See also, e.g., Usery v. Turner Elkhorn Mining Co.,* 428 U. S. 1, 14-21, 96 S. Ct. 2882, 49 L.Ed.2d 752 (1976); *National Independent Coal Operator's Ass'n v. Brennan,* 372 F. Supp. 16 (D. D.C.), *aff'd,* 419 U. S. 955, 95 S. Ct. 216, 42 L.Ed.2d 172 (1974); *Clark v. Chrysler Corporation,* 377 Mich. 140, 139 N.W.2d 714 (1966); *Lahti v. Fosterling,* 357 Mich. 578, 99 N.W.2d 490 (1959); *Schmidt v. Wolf Contracting Co.,* 269 App. Div. 201, 55 N.Y.S.2d 162 (1945), *aff'd per curiam,* 295 N. Y. 748, 65 N.E.2d 568 (1946). Consequently, I am of the view that the increase in costs as a result of the supplemental allowance mandated by the Legislature does not violate the appellees' constitutional rights.

Moreover, *Gange Lumber Co. v. Rowley,* 326 U. S. 295, 66 S. Ct. 125, 90 L. Ed. 85 (1945), relied upon by the majority, does not support its position. *Gange* involved a statute extending the period of time for an employee to apply for additional compensation payments. The statute allowed an employee to file for additional compensation even though the claim would have been barred under the limitations provision in effect at the time of the injury. The employer in *Gange,* as here, argued that the statute, in permitting additional payments which could not have been allowed under the law in effect at the time of the injury, would result in an unconstitutional increase of payments due the fund. In rejecting this argument, the Supreme Court made it clear that even if increased payment did result, this would not render the statute unconstitutional (326 U. S. at 303, 305, emphasis supplied):

> "A *mere increase in premium,* under a compulsory and publicly administered accident insurance plan, designed to operate at cost based upon general and individual experience rather than at an arbitrary figure, and surrounded with adequate procedural safeguards against arbitrary action, would not seem to be so obviously harsh or arbitrary in its effect upon employers generally that it could be said without question to be beyond the scope of the state's regulatory power or in violation of the due process prohibition of the federal Constitution.

> \* \* \*

> "Some *substantial* and more immediate harm must be shown to present a justiciable question concerning the state's power. The injury, as it appears from this record, is neither so certain nor so *substantial* as to justify a finding, upon that showing, that appellant's substantial rights have been or will be invaded by allowance and payment of the award."

Finding no constitutional infirmities, the Supreme Court dismissed the appeal.

The majority reiterates the conclusion in its earlier opinion "that to give effect to a legislative enactment increasing the amount payable to an employee to a sum greater than that payable at the time of the injury would impermissibly alter a substantial term of an existing contract between an employer and an employee (and derivatively as to an insurer). 278 Md. at 600." To support this proposition the majority relied upon *Loveless v. State Workmen's Compensation Commissioner,* 155 W. Va. 264, 184 S.E.2d 127 (1971), cited in 278 Md. at 600. It is noteworthy that this decision was explicitly overruled by the Supreme Court of Appeals of West Virginia recently in *Lester v. State Workmen's Compensation Commissioner,* W. Va., 242 S.E.2d 443, 450 n. 13 (1978). As in *Gange,* the court in *Lester* was faced with a constitutional attack on a legislative enactment extending the time for filing a workmen's compensation claim, which, if not for this statute, would have been barred under the earlier law. Finding no constitutional deficiency in the operation of the statute, the court upheld the action of the legislature. In so doing, the court observed (242 S.E.2d at 450-451, emphasis supplied):

"[D]espite our course of decisions in this area of the law, [we] are of the opinion that the rights and duties under our workmen's compensation statute *are no longer contractual* but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties. The only significance adhering to the contractual relationship is the existence of an employer-employee relationship. Once the employer-employee relationship is established, the statute imposes certain duties and responsibilities on the parties to that relationship."

588

This represents a much more realistic view of important social legislation, like workmen's compensation statutes, than the fiction adopted by the majority here.

Therefore, for the reasons expressed above and in the prior dissenting opinion in this case, I would reverse the judgment of the circuit court.

Judge Cole has authorized me to state that he concurs with these views.