**WESTERN PACIFIC RAILROAD COMPANY and The Southern Pacific Company, suing on their own behalf and on behalf of all other railroads similarly situated, Appellants,**

v.

**Howard W. HABERMEYER, Thomas M. Healy and A. E. Lyon, individually and as members of the Railroad Retirement Board, et al., Appellees.**

Nos. 20785, 21377.

United States Court of Appeals
Ninth Circuit.

Aug. 23, 1967.

Rehearing Denied Oct. 25, 1967.

---

McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for appellants.

Barefoot Sanders, Asst. Atty. Gen., Carl Eardley, Asst. Atty. Gen., Civil Division, Dept. of Justice, Washington, D. C., Myles F. Gibbons, Gen. Counsel, Railroad Retirement Bd., Chicago, Ill., Schoene & Kramer, A. C. Railway Labor Executives Ass'n, Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellees.

Before POPE, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellants are two of the railroads that are "employers" as defined in the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351–367, as amended, particularly § 351(a). They purport to sue, under Rule 23(a), F.R.Civ.P., on behalf of themselves and over 775 other railroads similarly situated.[1] Appellees are the members of the Railroad Retirement Board, which administers the Act, the Director of its Bureau of Unemployment and Sickness Insurance, the Chief of its Division of Claims Operations, and its seven regional directors. There are two appeals, one from an order denying a motion for a preliminary injunction, the other from a summary judgment dismissing the action. The dismissal was based on essentially the same reasoning used in denying the motion. See Western Pacific Railroad Co. v. Habermeyer, N.D.Cal.S. D., 1965, 248 F.Supp. 44. We affirm.

The controversy relates to the payment of unemployment benefits to certain railroad firemen, referred to in the record as "C(6) firemen." It arises in this way: In August, 1963, Congress took note of the long standing dispute between the railroads and the firemen relating to the railroads' desire to eliminate many firemen's jobs, and provided for the setting up of a special arbitration board to settle the matter. Pub.L. 88–108, 77 Stat. 132. On November 25, 1963, the arbitration board handed down its award. This provided for the elimination of certain jobs. Paragraph C(6) of the award covered firemen whose jobs were to be eliminated and who had more than two but less than ten years' seniority. They were to retain their rights to engine service assignments, "unless and until offered by the carrier another comparable job (such as, but not limited to, engineer, fireman (helper), brakeman, or clerk in the same or another seniority district) for which they are, or can become, qualified." If, when such a job was offered, it was not accepted, then the fireman's "employment and seniority rights" were to be terminated and the fireman was to be entitled to a severance allowance, estimated by appellants to average in excess of $5,600. Appellants allege that over 3,000 C(6) firemen elected not to take the comparable job, but took the severance allowance. Most of them also applied for unemployment benefits under the Act.

Appellants do not in this proceeding seek review of a decision that a particular C(6) fireman is entitled to benefits. What they attack is the validity of a ruling of the Board's then Director of Unemployment and Sickness Insurance, Carter, issued on June 5, 1964, and addressed to the Board's Regional Directors. The Carter memorandum instructed them,

---

1. We do not decide whether this is a proper case for such a class action.

in substance, that a C(6) fireman's choice of having his service terminated, with a severance allowance, does not disqualify him for unemployment benefits under the Act. The ruling says that such a fireman, making such a choice, is not to be regarded as having voluntarily left work without good cause within the meaning of section 354(a–2) (i) or as having failed to accept suitable work without good cause within the meaning of section 354 (a–2) (ii) of the Act.[2] These views have been informally approved by the Board. Appellants seek an injunction prohibiting the payment of benefits to any C(6) fireman who terminated his employment under the arbitration award and a declaration that the Carter memorandum is in violation of the Act, that the Board's procedure in deciding the cases of C(6) firemen is in violation of sections 354(a–2) and 355(b) of the Act, that every C(6) fireman who terminated his employment left work voluntarily, that in the case of each, the Board must determine whether the leaving was with good cause, that as to each the Board must determine whether the comparable job offered was suitable work and, if so, whether he failed,

without good cause, to accept it, and that all payments made without such determinations are unlawful.[3]

Appellants argue that section 354 (a–2) implicitly and section 355(b) explicitly command the Board to make specific findings of fact and conclusions of law on a claim by claim basis and that the blanket ruling of the Carter memorandum is in violation of these provisions. Section 355(b) reads:

"The Board is authorized and directed to make findings of fact with respect to any claim for benefits and to make decisions as to the right of any claimant to benefits. The Board is further authorized to hold such hearings, to conduct such investigations and other proceedings, and to establish, by regulations or otherwise, such procedures as it may deem necessary or proper for the determination of a right to benefits."

This contention must be considered in perspective, in the light of the nature of the duty that the Board must perform in administering the Act.

The receiving, processing and granting or denying of claims for benefits is a

2. "(a-2) There shall not be considered as a day of unemployment, with respect to any employee—
(i) (A) subject to the provisions of subdivision (B) hereof, any of the days in the period beginning with the day with respect to which the Board finds that he left work · voluntarily, and continuing until he has been paid compensation of not less than $750 with respect to time after the beginning of such period;
(B) if the Board finds that he left work voluntarily with good cause, the provisions of subdivision (A) shall not apply * * *."
"(ii) any of the thirty days beginning with the day with respect to which the Board finds that he failed, without good cause, to accept suitable work available on such day and offered to him, or to comply with instructions from the Board requiring him to apply for suitable work or to report, in person or by mail as the Board may require, to an employment office."

3. Appellants allege:
"that in each of said cases said Regional Director Defendants, and their agents or

employees, acting pursuant to the terms and implicit directions of the aforesaid 'Carter memorandum' and based upon a set of facts common in every respect to and applicable in the case of each such C(6) fireman found that no such C(6) fireman 'left work voluntarily' and failed to undertake to make or make, based upon the facts and circumstances pertaining to a particular claimant, any findings whatsoever concerning:
(a) The disqualification of the claimant under said Section 4(a-2) of said Act to receive said benefits.
(b) Whether the claimant's leaving of work had been 'with good cause.'
(c) Whether, with respect to the claimant who was found to have left work voluntarily 'with good cause' or not to have left work 'voluntarily,' the comparable job offered him, pursuant to Award 282, constituted 'suitable work' for the claimant, and, if so, whether, simultaneously with leaving work, such claimant had 'failed, without good cause, to accept suitable work.'"

wholesale business. In 1964–65, there were 111,000 railroad workers who claimed and were paid benefits. Congress evidently knew that there would be this type of business for the Board. In section 362(f), it authorized the Board to delegate its powers. In section 362(i), procedure is established for the setting up of employment offices and the registration of unemployed workers. It provides:

> "The Board may, when such registration is made personally by an employee, accept such registration as initial proof of unemployment sufficient to certify for payment a claim for benefits."

The Board has set up seven Regional Offices and ninety District Offices. There is a large number of unemployment claims agents designated by the railroads, with whom employees may register. Registration is by filling out a form of application for unemployment benefits and employment service and a claim for unemployment benefits. The latter must be filed every two weeks. These are forwarded to the District Office, and unless there is reason to doubt the accuracy of the information given, or the claimant's eligibility, the claim is certified for payment. This is, of necessity, the "findings of fact and conclusions of law" that the Board makes in the vast majority of cases When a large number of employees covered by the Act apply for benefits, and when their unemployment arises from some event that affects them all, it is the practice of those passing upon their claims to call upon the Board's District Office, and of such offices in turn to call upon its Regional Offices, for advice. The latter, in turn, may seek advice from the Division of Adjudication in the Board's Bureau of Unemployment and Sickness Insurance. The Bureau, if in doubt, calls upon the Board's Bureau of Law. It was just such a situation that produced the Carter memorandum, here attacked. In following it, the Board and its agents necessarily make findings of fact and apply its conclusions of law in each case, however informal or brief or incorrect appellants may consider such findings and conclusions to be. As a practical matter, we find it difficult to see how else the Board could assure a reasonable degree of uniformity in the application of the Act to benefit claims. The Board's method of finding facts and making conclusions of law may not resemble the method typically used by a court, but we think that the method is in line with the type of administration authorized by the Act.[4]

■■ With regard to appellants' request for a declaration that all C(6) firemen who elect to terminate their employment and accept severance pay in lieu of a comparable job must be considered to have voluntarily left work, we think that this court is without jurisdiction to render an opinion. In Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681, decided May 22, 1967, the Supreme Court was once again called upon to consider the rules as to when a party claiming to be aggrieved is entitled to judicial review of administrative action. As Mr. Justice Harlan states the rule, it is "that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. * * *" "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." The Administrative Procedure Act makes review available "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." (5 U.S.C. § 701(a)). In Abbott, the Court held that judicial review was not precluded by the statute there involved. In this case, we are convinced that the statute does preclude the review sought by appellants.

4. We find it unnecessary to decide whether, as the Board contends, section 355(b) authorizes but does not require findings of fact and conclusions of law each time an applicant applies for benefits.

The pertinent provisions of the Act are set out in the margin.[5] Subsection (f) of section 355 deals specifically with judicial review. In the case of claims for

5. "§ 355. Claims for benefits—Publication of Board's regulations.

"(a) Claims for benefits and appeals from determination with respect thereto shall be made in accordance with such regulations as the Board shall prescribe.

*    *    *    *    *

"(b) The Board is authorized and directed to make findings of fact with respect to any claim for benefits and to make decisions as to the right of any claimant to benefits. The Board is further authorized to hold such hearings, to conduct such investigations and other proceedings, and to establish, by regulations or otherwise, such procedures as it may deem necessary or proper for the determination of a right to benefits.

"(c) Each qualified employee whose claim for benefits ⁿhas been denied in whole or in part upon an initial determination with respect thereto upon a basis other than one which is reviewable pursuant to one of the succeeding paragraphs of this subsection, shall be granted an opportunity for a fair hearing thereon before a referee or such other reviewing body as the Board may establish or assign thereto.

"Any claimant whose claim for benefits has been denied in an initial determination with respect thereto upon the basis of his not being a qualified employee, and any claimant who contends that under an initial determination of his claim he has been awarded benefits at less than the proper rate, may appeal to the Board for the review of such determination. Thereupon the Board shall review the determination and for such review may designate one of its officers or employees to receive evidence and to report to the Board thereon together with recommendations.

*    *    *    *    *

"In any case in which benefits are awarded to a claimant in whole or in part upon the basis of pay earned in the service of a person or company found by the Board to be an employer as defined in this chapter but which denies that it is such an employer, such benefits awarded on such basis shall be paid to such claimant subject to a right of recovery of such benefits. The Board shall thereupon designate one of its officers or employees to receive evidence and to report to the Board on whether such benefits should be repaid. The Board may also designate one of its officers or employees to. receive evidence and report to the Board whether or not any person or company is entitled to a refund of contributions or should be required to pay contributions under this chapter, regardless of whether or not any claims for benefits will have been filed upon the basis of service in the employ of such person or company, and shall follow such procedure if contributions are assessed and payment is refused or payment is made and a refund claimed upon the basis that such person or company is or will not have been liable for such contributions.

*    *    *    *    *

"Final decision of the Board in the cases provided for in the preceding two paragraphs shall be communicated to the claimant and to the other interested parties within fifteen days after it is made. Any properly interested party notified, as hereinabove provided, of his right to participate in the proceedings may obtain a review of any such decision by which he claims to be aggrieved or the determination of any issue therein in the manner provided in subsection (f) of this section with respect to the review of the Board's decisions upon claims for benefits and subject to all provisions of law applicable to the review of such decisions. Subject only to such review, the decision of the Board upon all issues determined in such decision shall be final and conclusive for all. purposes and shall conclusively establish all rights and obligations, arising under this chapter, of every party notified as hereinabove provided of his right to participate in the proceedings.

"Any issue determinable pursuant to this subsection and subsection (f) of this section shall not be determined in any manner other than pursuant to this subsection and subsection (f) of this section.

"(d) The Board shall prescribe regulations governing the filing of cases with and the decision of cases by reviewing bodies, and the review of such decisions. The Board may provide for intermediate reviews of such decisions by such bodies as the Board may establish or assign thereto. The Board may (i) on its own motion review a decision of an intermediate reviewing body on the basis of the evidence previously submitted in such case, and may direct the taking of additional evidence, or (ii) permit such parties as it finds properly interested in the proceedings to take appeals to the Board. Unless a review or an appeal is had pursuant to this subsection, the decision of an intermediate reviewing body shall, subject to such regulations as the Board

benefits, it authorizes, first, the review of denials (in whole or in part) at the instance of the claimant or a union representing him, and, second, review of decisions as to whether a person is an "employer," at the instance of that person. If that were all, there might be merit in appellants' contention that, because the Act does not expressly forbid review of the granting of benefits at the instance of an employer, such review must be permitted under the doctrine stated in *Abbott,* supra.

But there is more. Subsection (c) expressly limits review of the Board's decision made under that subsection to the review provided for in subsection (f). This again, standing alone, does not answer appellants. Subsection (g), however, goes further. It provides that [1] "[f]indings of fact and conclusions of law of the Board in the determination of any claim for benefits or refund, [2] the determination of any other matter pursuant to subsection (c) of this section, and ▮ the determination of the Board that the unexpended funds in the account are available * * * shall be, except as provided in subsection (f) of this section, binding and conclusive for all purposes and upon all persons, including the Comptroller General and any other administrative or accounting officer, employee, or

agent of the United States, and shall not be subject to review in any manner other than that set forth in subsection (f) of this section."

▮ To us, this language clearly precludes review of a decision granting benefits to a C(6) fireman or to any other employee. Appellants' answer is, first, that they are not seeking review of an individual case, that they seek to attack the Board's legal conclusion relative to C (6) firemen independent of the Board's application of the rule to a particular claimant, and that, therefore, subsection (g) can have no bearing on their case. The difficulty with this argument is that the Board's rule can have no effect until it is applied in an individual case, and when it is applied, subsection (g) precludes review. To allow this action would be to subvert Congress' obvious intention to keep review within the framework of subsection (f) and to limit review to that provided by subsection (f). Indeed, it is difficult to imagine how such subversion could be accomplished more efficiently than through such a wholesale attack as the present declaratory judgment action.

▮ Appellants also say that subsection (g) only precludes review of decisions under subsection (c). They argue that the word "other" in the second cate-

---

may prescribe, be deemed to be the final decision of the Board."

\* \* \* \* \*

"(f) Any claimant, or any railway labor organization organized in accordance with the provisions of the Railway Labor Act, of which claimant is a member, or any other party aggrieved by a final decision under subsection (c) of this section, may, only after all administrative remedies within the Board will have been availed of and exhausted, obtain a review of any final decision of the Board by filing a petition for review within ninety days after the mailing of notice of such decision to the claimant or other party, or within such further time as the Board may allow, in the United States court of appeals for the circuit in which the claimant or other party resides or will have had his principal place of business or principal executive office, or in the United States Court of Appeals for the Seventh Circuit or in the United States

Court of Appeals for the District of Columbia. * * * Upon the filing of such petition the court shall have exclusive jurisdiction of the proceeding and of the question determined therein. * * *

"(g) Findings of fact and conclusions of law of the Board in the determination of any claim for benefits or refund, the determination of any other matter pursuant to subsection (c) of this section, and the determination of the Board that the unexpended funds in the account are available for the payment of any claim for benefits or refund under this chapter, shall be, except as provided in subsection (f) of this section, binding and conclusive for all purposes and upon all persons, including the Comptroller General and any other administrative or accounting officer, employee, or agent of the United States, and shall not be subject to review in any manner other than that set forth in subsection (f) of this section."

gory of subsection (g) limits the first category of the subsection to determinations of claims for benefits or refunds made within the scope of subsection (c). This interpretation would seem to charge Congress with a substantial redundancy. If the Congressional aim were only to limit review of findings of fact and conclusions of law made within the scope of subsection (c), the direct approach would have been to refer to findings of fact and conclusions of law in the determination of any matter pursuant to subsection (c). But Congress used broader language. Appellants counter that if "other" does not limit the first category of subsection (g) to subsection (c) determinations, then "other" is itself a redundancy. This, however, only follows if (1) findings and conclusions relative to claims are only authorized within the scope of subsection (c) and (2) no other determinations beyond those related to claims and refunds are authorized by subsection (c).

Neither proposition is true. Subsection (b) authorizes findings and conclusions generally with regard to claims, whether the case is reviewable under subsections (c) and (f) or not. And subsection (c) does not allow review of all determinations or by all parties aggrieved. Moreover, a full reading of subsection (c) shows that it authorizes the Board to make determinations as to whether a company should be required to pay contributions, even though no claims based upon service with such company have been filed.

We think a more logical conclusion is that the first category of subsection (g) relates to all determinations relative to claims for benefits or refunds, whether included within the scope of subsection (c) or not. The word "other" merely expands the first category to preclude review of determinations covered by subsection (c) but not related to claims for benefits or refunds. It follows that the last clause of subsection (g) expressly prohibits the review here sought.

What we have said about appellants' attack upon the Carter memorandum is, we think, equally applicable to their claim that the Board must make special findings of fact, as to each C(6) fireman. What appellants are saying, in substance, is that the Board has not made the kind of findings and conclusions that appellants think it should. They are really seeking wholesale review of the Board's findings and conclusions. Such review, whether individual or wholesale, at the instance of employers, is just what the Act in section 355(g) forbids.

In Railway Express Agency, Inc. v. Kennedy, 7 Cir., 1951, 189 F.2d 801, the court reached the same conclusion that we have reached as to the meaning and effect of subsection (g), and under quite comparable facts.

Affirmed.