No. 45,165

GEORGETTA LYON, Widow and as Guardian of LINDSEY LEE LYON, CLAUDIA GAY LYON, TIMOTHY LEON LYON and FRANCES DARLENE LYON, Minors (Lee Roy Lyon, Deceased), *Appellee*, v. DEAN WILSON, d/b/a L & W Well Service, and FIREMAN'S FUND INSURANCE COMPANY, *Appellants*.

(443 P. 2d 314)

Opinion filed July 13, 1968.

*Max E. Eberhart*, of Great Bend, argued the cause, and *H. Lee Turner* and *J. Eugene Balloun*, of Great Bend, were with him on the brief for the appellants.

*William H. Pringle*, of Great Bend, argued the cause, and *Melvin O. Nuss*, *Vernon L. Nuss*, *Leonard A. Birzer*, and *Gary L. Kaufman*, of Great Bend, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a workmen's compensation case where the employee, Lee Roy Lyon, died as the result of a coronary occlusion on September 12, 1962. The examiner's denial of compensation to the claimant (widow, and guardian of the minor children) was approved by the director. On appeal the district court found that Lyon had sustained an injury by accident arising out of and in the course of his employment, and awarded compensation. The respondents (employer and insurance carrier) now appeal.

The principal question, as stated by the respondents, is whether or not there is substantial evidence to support the district court's

finding that there was a causal connection between Lyon's work and his heart attack.

Lyon was employed as a driller on a cable tool rig. On the morning of the day he died, Lyon arose at 5:30, ate breakfast, and left his home at 6:15. He arrived at the well site about 7:00 and began working. Lyon's first task was to pull tubing, which required his running the brake and clutch on the rig. Following the pulling of the tubing, which took approximately two hours, Lyon assisted a member of his crew, Jacob Polzin, in making up a string of tools. Since this string of tools was needed in a hurry, the work was done by hand rather than by machinery, as was the customary practice. Although this was regular cable tool work, it was considered heavy work, and required the lifting, handling, and carrying of pieces of equipment, each varying in weight from 100 to 750 pounds. The entire operation took about an hour, during which period Lyon climbed up to the floor of the rig about six times. The work was completed by 10:00 a. m., the tools were put in the hole, and drilling was begun. Later, the hole was "baled," requiring the use of a baler—two 150-pound sections of pipe—which was put on the line by hand. The baling and drilling continued until noon.

As Polzin and Lyon walked to the dog house for lunch, Lyon commented he had a pain in his chest and felt lightheaded. After arriving at the dog house, Lyon asked Polzin if he thought he, Lyon, was having a heart attack. Lyon then left the dog house, went back to the rig and laid his head on the floor, which was about four feet above the ground. His face was gray in color at that time, and he told Polzin he had to get to town as he was sick. Lyon was then taken to Hoisington and admitted to the hospital. Prior to the arrival of a doctor or the giving of medication, Lyon talked to an X-ray technician and told her he had had a sharp pain in his chest early that morning and had been working hard making up a string of tools. Dr. Robert Moore arrived, and during the ensuing examination Lyon also told the doctor he had been working hard and had been making up a string of tools. Lyon's statement to Dr. Moore was verified by the claimant, who had gone to the hospital to be with her husband. An electrocardiogram was made and medical treatment administered, but Lyon died about an hour and a half after his admission to the hospital.

A postmortem examination of Lyon's heart, which was performed by Dr. Richard J. Taylor, a pathologist in Wichita, showed the

lumen to be 75 percent occluded and at several points reduced to approximately 10 percent of normal size. The pathologist was of the opinion that a newly formed adherent thrombus which he found near an old thrombus caused the occlusion in the lumen resulting in Lyon's death, and that this new thrombus was of probably less than four and certainly less than eight hours' duration. The pathologist further found that Lyon had marked arteriosclerotic thickening of the vessels, and in his opinion, a coronary occlusion was inevitable because of the degree of coronary artery disease present.

The medical evidence concerning the relation of Lyon's work to his coronary occlusion was sharply conflicting. None of the four doctors who testified had known or examined the workman during his lifetime. In fact, the record is void of any manifestations or symptoms of previous heart difficulty.

Dr. Benjamin Matassarin, who testified on behalf of the claimant, had not had the benefit of the pathologist's report, but based upon a hypothetical question that Lyon had engaged in extremely heavy manual labor on the day he died, including making up a string of tools, the doctor was of the opinion the activties had an effect on the cardiovascular system and were a direct correlation to the progress of the disease and death. On cross-examination Dr. Matassarin steadfastly maintained his opinion as expressed, although he conceded that from statistical information and clinical experience a correlation between work and the formation of a fatal thrombus might be questionable.

Dr. Taylor, the pathologist, testified on behalf of the respondents. His testimony was apparently highly persuasive to the lower court, for in the journal entry of judgment the trial judge commented:

"The contention of the respondent and insurance carrier that the formation of a Thrombus in the lumen of a heart artery could not be caused by or have any relation to stress and exertion is refuted by . . . Dr. Taylor, the pathologist . . ."

The doctor testified that a person coming to him with shortness of breath, gray in color and ill at his stomach had symptoms of what might be a coronary occlusion; that any person with these symptoms should not be engaged in any kind of labor; that if he was truly having a coronary occlusion at that time, stress or continued physical activity would aggravate his condition. The doctor's testimony continued as follows:

"Q. What causes—how does the exertion cause the occlusion?
"A. Well, I don't know as I can say specifically how it causes the occlusion.

What it causes is an increased need of the myocardium of the heart for additional blood supply. Ordinarily, in a normal individual, this is accomplished by increase in heart rate, increase of blood pressure. This supplies more blood to the heart muscle. In a person with a very narrowed vessel due to an old thrombus or due to marked arteriosclerosis, the body is not able to meet this increased blood supply to the heart. As a result, the heart muscle will build up lactic acid, which is a breakdown product of its metabolism, and undergoes and ischemia, in other words, a deficiency of blood supply and is ordinarily associated with heart pain, also spasm of the coronary arteries. Due to the pain and the spasm and the narrowing of the vessels, certain idiocurrents are set up in the blood flow and sometimes these plaques are ruptured, bleed underneath them, and a new thrombus begins to form.

    ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"Q. Doctor, if I understand you correctly, you said that stress, in your opinion, does, can bring on coronary occlusion.

"A. If I said it that way, I don't really mean it that way. Let me restate it. Stress of any sort, physical or mental or emotional stress increases the heart's need for oxygen. If these vessels are narrowed, then the heart doesn't get adequate oxygen, the patients die without even any thrombus because of coronary insufficiency. I don't know that anybody has demonstrated conclusively that the stress itself causes the thrombus. I think the thrombus is the result of the damage to the lining of the vessels. The stress merely increases the need of the heart for blood, and if it can't be met, then the patients sometimes die of arrhythmia or a cardiac arrest because of an insufficient blood supply."

Respondents' other two medical experts, Dr. Emery Calovich, an internist specializing in chest disease, and Dr. Richard Sifford, another specialist in the field of cardiovascular disease, each testified that in his opinion the work Lyon was doing did not in any way cause or aggravate or contribute to his death. Dr. Calovich, however, did say that exertion can produce anoxia, or deficiency of oxygen to the heart muscle, and Lyon could have had anoxia which could have caused his pain.

Great divergence in medical testimony is quite common in workmen's compensation cases where the crucial question is the causal relation of the injury to the work being performed. But it must be remembered that this court on appellate review has no jurisdiction to determine disputed factual questions; that function belongs to the district court alone, and its findings and judgment will not be disturbed if supported by substantial, competent evidence. In reviewing the record as to whether it contains substantial, competent evidence to support the findings and judgment of the lower court, we are required to consider the evidence in the light most favorable to the prevailing party below. Moreover, we are concerned only with that evidence which proves or tends to

prove the findings of the trial court, and not with evidence which would support a contrary finding. (*Phillips v. Helm's Inc.*, 201 Kan. 69, 439 P. 2d 119; *Herrera v. Fulton Construction Co.*, 200 Kan. 468, 436 P. 2d 364; *Jibben v. Post & Brown Well Service*, 199 Kan. 793, 433 P. 2d 467; *Mein v. Meade County*, 197 Kan. 810, 421 P. 2d 177; *Atwell v. Maxwell Bridge Co.*, 196 Kan. 219, 409 P. 2d 994.)

The résumé of the testimony of the four doctors amply illustrates their inability to agree about Lyon's work causing his coronary occlusion. There was abundant lay testimony, however, that the work being performed by Lyon was extremely heavy and strenuous. There was evidence he had had a pain in his chest early that morning, which, according to the medical testimony, would be a symptom of an oxygen deficiency to the heart muscle. His symptoms were fully manifested by lunchtime. The mere lapse of time between work effort and heart attack does not compel the conclusion that connection between the two is lacking. (*Mein v. Meade County*, supra.) The testimony of Dr. Taylor tended to establish there was a definite relationship between the stress and exertion involved in Lyon's work and the formation of the new thrombus that eventually caused the occlusion. In fact, Dr. Taylor was of the opinion the new thrombus which caused Lyon's death was of not more than eight hours' duration. In addition, we have already recounted the testimony of Dr. Matassarin. In resolving the issue of causation—whether the injury "arose out of" the employment—the district court was free to consider the lay and medical testimony together. (See, *Hanna v. Edward Gray Corporation*, 197 Kan. 793, 421 P. 2d 205.)

A coronary occlusion which results in the death of a workman constitutes personal injury by accident when it arises out of and in the course of employment. (*Pratt v. Seis-Tech Exploration Co.*, 199 Kan. 732, 433 P. 2d 555; *Mein v. Meade County*, supra; *Geurian v. Kansas City Power & Light Co.*, 192 Kan. 589, 389 P. 2d 782.) In such case the claimant has the burden of proving that the fatal occlusion arose out of the workman's employment—that is, there must be some causal connection. (*Hanna v. Edward Gray Corporation*, supra.) When the physical structure of a workman, whatever it may be, gives way under the stress or strain of his usual labor, causing a coronary occlusion from which death results, his death is an accident which arises out of his employment; and this is true even when the accident only serves to aggravate or

accelerate an existing disease, intensifies the affliction, or contributes to the death of the workman. The precipitating cause of the fatal occlusion must be traceable in some reasonable way to the work being performed. (*Meyers v. Consolidated Printing & Stationery Co.*, 201 Kan. 806, 443 P. 2d 319; *McIver v. State Highway Commission*, 198 Kan. 678, 426 P. 2d 118; *Hanna v. Edward Gray Corporation*, supra; *Pence v. Centex Construction Co.*, 189 Kan. 718, 371 P. 2d 100; *Bohanan v. Schlozman Ford, Inc.*, 188 Kan. 795, 366 P. 2d 28.)

Viewing the lay and medical testimony in the light most favorable to the claimant, we are compelled to conclude there was substantial, competent evidence showing a causal relation between the work being performed by Lyon and his coronary occlusion.

The respondents further complain that the district court erred in denying their motion to make the deposition of Dr. Moore in another proceeding part of the record in this case. We are told the testimony had a direct bearing on the doctor's credibility as a witness. Respondents cite no authority to support their position, nor do we find any merit in their argument. The jurisdiction of the district court in a workmen's compensation appeal is to grant or refuse compensation or to increase or decrease any award as justice may require. The court may not grant a trial *de novo* or hear new evidence, but takes the case on the transcript of proceedings previously compiled. (*Casebeer v. Casebeer*, 199 Kan. 806, 433 P. 2d 399; *Scammahorn v. Gibralter Savings & Loan Assn.*, 197 Kan. 410, 416 P. 2d 771.)

Respondents also contend the 1967 amendment to K. S. A. 44-501 (L. 1967, ch. 280, § 1) should be considered by this court in determining whether or not compensation was due, even though Lyon's injury and death occurred prior to the effective date of the enactment. Under the amendment, compensation is not payable in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of his regular employment. We need not decide what effect the amendment would have on the result of this case, for we regard the amendment as being sustantive rather than procedural and remedial in nature. If there was any question about the retrospective application of the amendment after what was said in *Pratt v. Seis-Tech Exploration Co.*, supra, where the point was decided, we wish to set the matter at rest.

The liability of an employer to an injured employee arises out of contract between them, and the terms of a statute are embodied in that contract. The injured employee must therefore recover on the contract, and his cause of action accrues on the date of the injury. The substantive rights between the parties are determined by the law in effect on the date of injury. Amendments to the compensation act which are merely procedural or remedial in nature, and which do not prejudicially affect substantive rights of the parties, apply to pending cases. The general rule, however, is that a statute will operate prospectively rather than retrospectively, unless its language clearly indicates that the legislature intended the latter, and that retrospective application will not be given where vested rights will be impaired. (*Johnson v. Warren,* 192 Kan. 310, 387 P. 2d 213; *Ward v. Marzolf Hardwood Floors, Inc.,* 190 Kan. 809, 378 P. 2d 80; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Ellis v. Kroger Grocery Co.,* 159 Kan. 213, 152 P. 2d 860, 155 A. L. R. 546.)

We regard the amendment as one directly affecting the rights and obligations of the parties to the employment contract. It prescribes that compensation will be paid in coronary and cerebrovasular cases only under certain conditions. Prior to the amendment the statute made no distinction. The amendment contains no language disclosing an intention that it should be applied retrospectively. It, therefore, will be given prospective application to those injuries occurring subsequent to its effective date.

The judgment is affirmed.