OLLIE RICHARD COOPER *v.* WICOMICO COUNTY, DEPARTMENT OF PUBLIC WORKS ET AL.

[No. 8, September Term, 1976.]

*Decided November 30, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Don E. Richardson,* with whom was *Kenneth v. Heland* on the brief, for appellant.

*Theodore B. Cornblatt* and *Alfred M. Porth,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which LEVINE, J., concurs at page 604 *infra.*

We granted certiorari in this workmen's compensation case to determine whether a supplemental award of compensation to the appellant Cooper, which increased the amounts payable to him under a prior award for permanent total disability, unconstitutionally disturbed the contractual or other vested rights of the appellees — Cooper's employer and the employer's insurer.[1]

---

1. Certiorari was granted prior to decision by the Court of Special Appeals. *See* Maryland Code (1974), Courts and Judicial Proceedings Article, § 12-201.

On February 7, 1969, Cooper sustained an accidental injury in the course of his employment by Wicomico County. On March 17, 1971, the Commission found Cooper to be totally and permanently disabled and ordered that he be paid compensation at the rate of $45.33 per week, not to exceed $30,000 in total, the maximum payable at that time under Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 36 (1) (a). By Chapter 832 of the Laws of Maryland of 1973 the General Assembly added new subsection (10) to § 36; it provided in pertinent part that any employee permanently and totally disabled as a result of any injury suffered before July 1, 1973, and after July 1, 1965, who, on July 1, 1973, was receiving benefits for permanent and total disability "shall be entitled to a supplemental allowance of compensation as calculated under paragraph (b) . . . [to] continue only for the number of weeks that the employee is entitled to receive benefits under his original award." Paragraph (b) of § 36 (10) directs how the additional allowances are to be calculated; the result in this case, under the order of the Workmen's Compensation Commission of August 1, 1973 directing the appellees to comply with the mandate of ch. 832 of the Laws of 1973, was to increase the weekly payments to Cooper from $45.33 to $57.96 and the limit of the total payable from $30,000 to $38,397.00.

On appeal to the Circuit Court for Wicomico County, Judge Pollitt accepted the argument of the appellees that ch. 832 could not constitutionally be applied retrospectively, although the legislature clearly intended that it should, since to do so would divest or otherwise adversely affect contractual or other vested rights of the appellees by increasing their obligation under the basic award to pay the maximum set by the law as of the time of the injury. Judge Pollitt reversed the Commission, holding that ch. 832 was unconstitutional and invalid.

We think the lower court was correct if the operational effect of ch. 832 requires an employer or insurer to pay more than it was required to pay under the law in effect at the time of the injury. It is generally held that the basis of a compensation award is contractual and that the amount

payable thereunder by an employer or insurer cannot be increased retrospectively.

In *State Industrial Commission v. Nordenholt Corp.*, 259 U. S. 263, 271, 42 S. Ct. 473, 66 L. Ed. 933 (1922), the Supreme Court said:

> " '... An award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute giving the commission power to make an award is read into and becomes a part of the contract. . . . The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee be injured, will pay to him a certain sum to compensate for the injuries sustained, or if death results, a certain sum to dependents. . . . It is a part of the compensation agreed to be paid for services rendered in the course of the employment.' "

To the same effect is *Bradford Electric Light Co. v. Clapper*, 286 U. S. 145, 159, 52 S. Ct. 571, 76 L. Ed. 1026 (1932), where the Court observed that "[f]or the purpose of that act, as of the workmen's compensation laws of most other states, is to provide . . . not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinate." *See also Magnolia Petroleum Co. v. Hunt*, 320 U. S. 430, 64 S. Ct. 208, 88 L. Ed. 149 (1944), holding that a workmen's compensation award which has become final is entitled to the same full faith and credit as a judgment of a court, so that another state may not increase that judgment for the same injury. *Compare Ireland v. Shipley*, 165 Md. 90, 102, 166 A. 593 (1933), wherein our predecessors noted that "[t]he rational basis of the policy underlying the [workmen's compensation] act is that there be some definite time limit in respect to the award of compensation, in order that employers may organize their businesses and insurers

adjust their rates with an intelligent comprehension of the demands they may be called upon to meet."

A number of courts throughout the country have held that to give effect to a legislative enactment increasing the amount payable to an employee to a sum greater than that payable at the time of the injury would impermissibly alter a substantial term of an existing contract between an employer and an employee (and derivately as to an insurer). *See,* for example, *Loveless v. State Workmen's Compensation Commissioner,* 155 W. Va. 264, 184 S.E.2d 127 (1971); *Mitchell v. U.S.F. & G. Co.,* 206 F. Supp. 489 (E.D. Tenn. 1962); *Noffsker v. K. Barnett & Sons,* 72 N. M. 471, 384 P. 2d 1022 (1963); *Lyon v. Wilson,* 201 Kan. 768, 443 P. 2d 314, 319 (1968). *See also Preveslin v. Derby & A. Developing Co.,* 112 Conn. 129, 151 A. 518 (1930).

We think that Maryland law is consistent with these decisions. In *Crowner v. Balto. Butchers Association,* 226 Md. 606, 612-13, 175 A. 2d 7 (1961), the Court recognized the contractual nature of an employer's obligation to his employees when it observed that the terms of the contract of hire "were specific as to all factors," that the claimant's employment was insured "in accordance with the provisions of the Workmen's Compensation law," and that "[b]y reason of the contract of hire the employer incurred certain obligations under the Compensation law." Once these obligations are formally determined by an order of the Workmen's Compensation Commission, the rules of *Janda v. General Motors Corp.,* 237 Md. 161, 169, 205 A. 2d 228 (1964), are applicable and consequently "[a] statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause . . . ." *See also Silberman v. Jacobs,* 259 Md. 1, 19, 267 A. 2d 209 (1970) ("the legislature could not impair . . . [dower rights] retroactively by *expanding* the husband's interest in the land"); *Smith v. Westinghouse Electric,* 266 Md. 52, 291 A. 2d 452 (1972); *Cline v. City of Baltimore,* 13 Md. App. 337, 345, 283 A. 2d 188 (1971), *aff'd,* 266 Md. 42, 291 A. 2d 464 (1972) ("the rights and liabilities of the parties [under the

compensation statute] became fixed for the first time [when injury or death, as the case may be, occurred] and the rate of compensation could not thereafter, with respect to such event, be changed").

The facts of a case are, however, all important. The record before us does not contain facts which afford us the opportunity to determine — and the trial court did not go into the matter — whether any substantial vested right of either appellee was divested or any obligation either had was substantially increased. During the course of its passage through the General Assembly, ch. 832 was amended to provide: "Whenever the State Accident Fund, insurance carrier or self-insured employer makes a supplemental allowance payment under § 36(10) of this article, he shall be reimbursed from the Subsequent Injury Fund [annually by payment made by the State Treasurer]." The Fund was created by ch. 637 of the Laws of 1945, now codified as § 66 of Art. 101 of the Code; its original purpose was to create a Fund to pay previously disabled or injured employees who sustain a subsequent injury which is not of itself disabling but which, coupled with the prior impairment, renders the employee permanently disabled. *See Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A. 2d 506 (1968). The primary sources of monies for the Fund are payments by employers, insurance carriers and the State Accident Fund of a percentage (originally 1%, now 5%) "on all awards rendered against such employer ... for permanent disability or death" and interest earned on the Fund from investments. Whenever the Fund equals or exceeds $1,000,000, no further contributions are required but when the Fund is reduced below $500,000, or the Commission determines that payments from the Fund in the next three months will probably cause it to go below $500,000, contributions must be resumed.

In *Gange Lumber Co. v. Rowley,* 326 U. S. 295, 66 S. Ct. 125, 90 L. Ed. 85 (1945), the Supreme Court dealt with a Washington statute which was described as neither an employers' liability act nor an ordinary workmen's compensation law, but rather as an industrial insurance

statute "having all the features of an insurance act" (a characterization applicable to the Subsequent Injury Fund).

The Washington statute provided a state Fund created by annual assessments on employers. Awards were paid solely from the Fund and neither the employer nor the employee had a vested interest in the Fund because "the moneys when collected are public moneys, held and administered by the state, albeit pursuant to the statutory purpose they constitute a 'trust fund' for the benefit of injured workmen and their dependents." 326 U. S. at 301. The controversy in *Gange* stemmed from a Washington statute which increased the time within which an employee could apply for additional compensation for an injury for which a prior final award had been made. The employee applied after limitations had expired under the former law but within the period set by the new statute and was awarded additional compensation. The employer asserted that the amendment had been applied retroactively to its substantial detriment and that its constitutional rights had been violated.

The Supreme Court rejected the employer's claim of unconstitutionality on the ground that no substantial injury had been shown on the record by the employer. It said that although the employer claimed that it would have to pay the award, "it is not asserted that this burden will result from an increase in appellant's rate or in fact that any increase necessarily will follow from allowance and payment of the award." 326 U. S. at 303-304. The Court said further at 305 that "in the absence of all evidence showing the facts concerning the other factors, it is entirely problematical whether an increase will follow or, if so, whether it will be wholly mathematical and infinitesimal or substantial in its ultimate effect upon the appellant. This being so, appellant's complaint comes down, on the record, to nothing more than the bare possibility of some injury in the future."

Appellees claim that they will suffer substantial injury from the operation of the challenged statute because they must bear the cost of administering the program and will suffer the loss of use — that is the earnings on — the monies paid out.

Appellees' claim of unconstitutionality because they, and not the Subsequent Injury Fund, are required to administer the program in the first instance is plainly without merit in view of *Allied American Co. v. Comm'r*, 219 Md. 607, 150 A. 2d 421 (1959); in that case, our predecessors held that insurers could constitutionally be forced to administer the settlement of claims against the Unsatisfied Claim and Judgment Act. Appellees' claim of substantial harm because of loss of use of their money between the time they pay the supplemental benefits to an employee and the time of reimbursement by the Fund will require explicit and precise evidence of substantiality sufficient to mount up to the standards of *Gange* and *Allied American* for appellees to prevail. On the other hand, if the challenged law read with other pertinent parts of the workmen's compensation law requires the insurer to pay the annual assessment on the · monies they temporarily pay out under ch. 832, the appellees would appear to have suffered substantial harm. And whether the supplemental payments required to be made under ch. 832 will so deplete the Fund as to require that additional assessments be made is a matter upon which no light is disclosed by the record. We conclude that it is in the public interest that this case be determined on its substantial merits and since the record before us is deficient in the designated particulars, we shall remand under Maryland Rule 871 for further proceedings, including the taking of testimony.

Consistent with the provisions of Rule 871, requiring that we determine all questions properly presented, we find no merit in appellees' argument that the classification of beneficiaries drawn by Chapter 832 amounts to a denial of equal protection violative of the Fourteenth Amendment to the Federal Constitution. *See Bowie Inn v. City of Bowie*, 274 Md. 230, 335 A. 2d 679 (1975).

> *Case remanded without affir-*
> *mance or reversal for further*
> *proceedings consistent with*
> *this opinion.*
> *Costs to abide the result.*

*Eldridge, J., dissenting:*

By Chapter 832 of the Acts of 1973, the Workmen's Compensation Law, Maryland Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, was amended to add § 36 (10). The amendment provided that any employee receiving benefits for a permanent total disability caused by an injury occurring after July 1, 1965, but before July 1, 1973, the effective date of the Act, be paid a supplemental allowance. The amount of this allowance is calculated under a formula provided in the Act. The total compensation to be paid, however, including the supplemental allowance, is not to exceed the maximum weekly benefits provided for in Art. 101, § 36 (2). The supplemental allowance applies only to weekly benefit payments to be made after the effective date of the amendment and continues only for the period of the original award.

The supplemental allowance is to be paid to the claimant in the first instance by the insurance carrier or the self-insured employer. However, under Art. 101, § 66, the party paying the supplemental allowance is to be reimbursed by the Subsequent Injury Fund, a State agency. The Fund is maintained by payments from employers or insurance carriers based on a 5% assessment on all awards rendered against the employer for permanent disability and death, including settlement agreements approved by the Workmen's Compensation Commission. Art. 101, § 66 (2). These payments are required only where the monies in the Subsequent Injury Fund are reduced to an amount below $500,000.00. Art. 101, § 66 (4).

The effect of the supplemental allowance is to allow those who are receiving benefits for a permanent total disability to receive the maximum award permissible under current provisions of the Workmen's Compensation statute. The purpose of the amendment is clear: to alleviate the effects of inflation which may have rendered future payments under prior awards totally inadequate. Thus, although the supplemental allowance is applicable to a retrospective class of claimants, namely those receiving benefits for a

permanent total disability caused by an injury occurring before July 1, 1973, it is prospective in that it affects only payments to be made after the effective date of the amendment. And because the insurer or employer is to be reimbursed for payments by the Subsequent Injury Fund, the liability of the insurer or employer is not increased over that which was fixed by the original award and determined by the law in effect at the time of the injury.

Because of these features, I do not believe that Art. 101, § 36 (10), unconstitutionally impairs contractual obligations in violation of Art. 1, § 10 of the United States Constitution or deprives the employer of vested property rights without due process of law in violation of the Fourteenth Amendment to the United States Constitution, as the appellees contend.

Even accepting arguendo the fiction that the obligation of the employer to compensate his employee for injuries, under the circumstances like those here, is contractual in nature, *compare Crowner v. Balto. Butchers Ass'n*, 226 Md. 606, 175 A. 2d 7 (1961), *with McAllister v. Board of Education, Kearny*, 79 N.J. Super. 249, 191 A. 2d 212, 217-218 (1963), the contract clause does not prohibit the Legislature from enacting laws which may affect the rights of contracting individuals. If the "legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end," it will not be rendered unconstitutional despite an incidental effect on contractual obligations. *Home Building & Loan Ass'n v. Blaisdell*, 290 U. S. 398, 438, 54 S. Ct. 231, 240, 78 L. Ed. 413 (1934). Assuming that there is some impairment of the contract between the employer and employee here, I believe that it is permissible given the State's legitimate interest in insuring that injured workers receive adequate compensation. Moreover, the extent of any impairment would be almost negligible in view of the reimbursement provision of the amendment.

Additionally, the appellees contend that Art. 101, § 36 (10), results in the deprivation of a vested right without due process of law. Appellees argue that an employer has a vested right in having his obligation to an employee deter-

mined by the law in effect at the time of the injury, and that payment of the supplemental allowance would increase this obligation, thus depriving the employer of a vested right. If the effect of § 36 (10) were to increase the liability of the employer or to impose a new obligation on the employer for an injury occurring prior to the enactment of § 36 (10), there might arguably be merit to this contention. *But see National Independent Coal Operator's Ass'n v. Brennan*, 372 F. Supp. 16 (D. D.C.), *aff'd*, 419 U. S. 955, 95 S. Ct. 216, 42 L.Ed.2d 172 (1974) (requiring payment of benefits under Black Lung Benefits Act for disability or death occurring prior to the effective date of the Act held not to be violative of the Due Process Clause of the Fifth Amendment); *Schmidt v. Wolf Contracting Co.*, 269 App. Div. 201, 55 N.Y.S.2d 162 (1945), *aff'd per curiam*, 295 N. Y. 748, 65 N.E.2d 568 (1946) (statute increasing maximum weekly compensation payments, for injuries occurring prior to effective date of statute, held to be constitutional where increased compensation was to be paid only for periods after the effective date); *Price v. All American Engineering Company*, 320 A. 2d 336 (Del. 1974) (a supplemental plan, quite similar to the Maryland law involved in the present case, was held not to violate the Due Process Clause); *Lahti v. Fosterling*, 357 Mich. 578, 99 N.W.2d 490 (1959) (an amendment to the Workmen's Compensation Law, requiring the employer to pay additional medical benefits on account of an injury occurring prior to the amendment, was held to be constitutional); *Clark v. Chrysler Corporation*, 377 Mich. 140, 139 N.W.2d 714 (1966) (reclassification of injuries which occurred prior to the effective date of the statute, resulting in an increase of benefits payable after the effective date, held to be constitutional).

However, § 36 (10) does not increase the employer's obligation above the original award. Rather it merely requires that the insurer or employer pay the supplemental allowance with the regular weekly payments, and it then provides that a State agency, the Subsequent Injury Fund, shall reimburse the employer for these payments on an annual basis. Thus, the only possible injuries to the

employer are (1) the loss of the use of the payments advanced prior to reimbursement and (2) the mere possibility that the funds so reimbursed would deplete the Subsequent Injury Fund to the extent that additional payments from employers or insurers generally would be required.

This mere possibility that additional payments to the Subsequent Injury Fund might be required is not, in my view, sufficient to show any injury to the employer caused by the payment of the supplemental allowance. The law creating the Subsequent Injury Fund provides for a mandatory compensation plan administered by the State and supported by an assessment on all insurers or employers based upon prior awards against them. If the Fund, for whatever reason, were impaired so as to require additional payments, all insurers or self-insured employers, and not only those advancing supplemental allowances, would be required to make the additional payments. Payments to the Fund are more in the nature of a general tax assessed to cover expenses of administering a government program. Certainly the fact that the State may choose to increase the benefits of the program, possibly increasing the contributions due from all insurers or employers, does not constitute a deprivation of any right of the employer in violation of the Fourteenth Amendment's Due Process Clause. *See Allied American Co. v. Comm'r*, 219 Md. 607, 150 A. 2d 421 (1959). A similar legislative program, involving supplemental payments to those already receiving disability benefits and providing for reimbursement from a Second Injury and Contingency Fund with funds generated by an additional tax on employers and insurance carriers, was held by the Supreme Court of Delaware not to violate either the Contract Clause or the Due Process Clause in *Price v. All American Engineering Company, supra.*

In my view, there would be no violation of constitutional rights of the employer even if some indirect additional costs were to result from the payment of the supplement allowance. Consequently, I do not see any purpose in remanding this case to the circuit court for additional

findings of fact.[1] Additionally, *Gange Lumber Co. v. Rowley*, 326 U. S. 295, 66 S. Ct. 125, 90 L. Ed. 85 (1945), relied upon by the majority in remanding this case, does not support the majority's position. In *Gange*, a statute was enacted extending the period of time during which an employee could apply for additional payments from a publicly administered compensation fund. The effect of the statute was to allow an employee to file a claim for additional compensation even though the claim would have been barred under the limitations provision in effect at the time of the injury. The employer there, as here, contended that the statute, in permitting additional payments which could not have been allowed under the law in effect at the time of the injury, would result in an increase of payments due the fund and thus deprive it of property without due process of law. The Supreme Court noted that these allegations of a possible increase in premiums payable to a publicly administered compensation fund were too speculative and remote to even present a question of injury to any legally protected interest. The Court emphasized that a statute would have to produce some more immediate and substantial injury than a mere increase in premiums to be beyond the state's regulatory power and in violation of the Due Process Clause of the Fourteenth Amendment, stating (326 U. S. at 303, 305):

> "A mere increase in premium, under a compulsory and publicly administered accident insurance plan, designed to operate at cost based upon general and individual experience rather than at an arbitrary figure, and surrounded with adequate procedural safeguards against arbitrary action, would not seem to be so obviously harsh or arbitrary in its

---

1. Apparently, one issue of law is to be decided by the circuit court on remand. The majority states that "if the challenged law read with other pertinent parts of the Workmen's Compensation Law requires the insurer to pay the annual assessment on the monies they temporarily pay out under Ch. 832, the appellees would appear to have suffered substantial harm." Whether under Art. 101, § 66 (2), the awards upon which the 5% assessment to the Subsequent Injury Fund is based includes supplemental allowances is a matter of statutory construction. This is clearly a question of law which should be decided by this Court.

effect upon employers generally that it could be said without question to be beyond the scope of the state's regulatory power or in violation of the due process prohibition of the federal Constitution.

\* \* \*

"The Fourteenth Amendment, through the due process clause, does not assure protection from the states' regulatory powers against injuries so remote, contingent and speculative. Some substantial and more immediate harm must be shown to present a justiciable question concerning the state's power. The injury, as it appears from this record, is neither so certain nor so substantial as to justify a finding, upon that showing, that appellant's substantial rights have been or will be invaded by allowance and payment of the award."

Accordingly, the appeal was dismissed and not remanded to the state court for additional proceedings.

For these reasons, I believe that Ch. 832 of the Acts of 1973 is constitutional and that the judgment of the circuit court should be reversed.

Judge Levine has authorized me to state that he joins in the views expressed in this dissent.