# HILDRETH T. HARRIS v. HARTFORD ACCIDENT & INDEMNITY COMPANY

[No. 1628, September Term, 1982.]

*Decided July 13, 1983.*

The cause was argued before WILNER and ALPERT, JJ., and LLOYD L. SIMPKINS, Associate Judge of the First Judicial Circuit, specially assigned.

*Martin E. Gerel,* with whom were *Ashcraft & Gerel* on the brief, for appellant.

*Alfred J. Dirska,* with whom were *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

In *Cooper v. Wicomico County,* 284 Md. 576 (1979), the Court of Appeals struck down as unconstitutional an attempt by the General Assembly to increase workmen's compensation benefits retrospectively — *i.e.,* to increase the amount of benefits payable under awards made prior to the enactment. That result followed a conclusion previously announced in *Cooper v. Wicomico County,* 278 Md. 596 (1976).

This case presents a variation on the *Cooper* theme. It is a significant variation, however.

Effective January 1, 1971, Janco Enterprises (Janco) entered into a collective bargaining agreement with a local affiliate of the International Association of Bridge, Structural and Ornament Workers. Article 21 of that agreement dealt with Janco's obligation to provide workmen's compensation insurance. It provided, in relevant part, that:

> "The employer further agrees to carry adequate Workmen's Compensation Insurance conditioned in such a manner that the same schedule of benefits as for the District of Columbia shall be used and the employee shall receive compensation benefits upon the basis, and at the same rate of compensation as provided by the Workmen's Compensation law of the District of Columbia, if injured or killed while employed outside the jurisdiction of the District of Columbia Workmen's Commission."

In furtherance of that obligation, Janco purchased an insurance policy from appellee, Hartford Accident & Indemnity Co. Although the policy itself is not in the record before us, and we therefore do not know its exact language, we are told by the parties that under the policy appellee agreed to pay to any of Janco's employees who were injured outside of the District of Columbia the difference between the workmen's compensation benefits provided under the law of the State where they were injured and the scale of benefits afforded under the D. C. law for the same percentage of disability found by the Commission in the State where the injury occurred.

This proceeding represents an attempt by appellant, a Janco employee who was injured in Maryland, to enforce that obligation.

At the time the collective bargaining agreement and the insurance policy were entered into, and at all relevant times thereafter, the District of Columbia had as its local workmen's compensation law the Federal Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901, *et seq.,* hereafter LHWCA). D. C. Code, § 36-501 provided that:

> "The provisions of chapter 18 of title 33, U.S. Code, including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs. . . ." [1]

Until 1972, benefits payable under the LHWCA for permanent total disability were, as in Maryland, subject to a maximum amount stated in the Act. In 1972, Congress did away with the fixed statutory maximum and replaced it

---

[1]. In 1980, the District of Columbia enacted its own workmen's compensation law. That act, scheduled to take effect October 1, 1981, was challenged in court, however, and was not declared valid until January, 1982. *See District of Columbia v. Greater Wash., Etc.,* 442 A.2d 110 (D.C. App. 1982). The new law is not involved in the proceeding now before us.

with an automatic annual adjustment based upon fluctuations in a "national average weekly wage" to be calculated each year by the Secretary of Labor. October 27, 1972, Pub. L. 92-576, 86 Stat. 1252. Under the 1972 law, and in particular under the amendments made to §§ 906 and 910 of title 33, "benefits payable for permanent total disability or death where the injury occurred after the enactment of [the 1972 law] will be increased by the percentage of increase, if any, in the applicable national weekly wage over that of the previous year." H. Rep. No. 1441, 92d Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Ad. News 4698, 4716.

On July 12, 1973, appellant sustained an accidental injury in the course of his employment with Janco. As noted, the injury occurred in Maryland, and, consequently, a claim for workmen's compensation benefits was filed with the Maryland Workmen's Compensation Commission. On June 11, 1980, after several preliminary awards and *de novo* court proceedings, the Commission found that appellant's disability from the 1973 accident had, as of March 21, 1978, become permanent and total. Upon that finding, it ordered compensation, commencing as of March 21, 1978, at the maximum rate of $96.80 per week. The Commission had earlier determined appellant's average weekly wage at the time of the injury to be $318.

Under the District of Columbia law — *i.e.,* the LHWCA as amended by the 1972 Act (PL 92-576) — based on an average weekly wage of $318, appellant would have been entitled to substantially higher benefits. By virtue of the annual adjustments to the "national average weekly wage," he would have received under the D. C. law, through September 30, 1981:

    (1) From 3/21/78 to 9/30/78      $179.04/week
    (2) From 10/1/78 to 9/30/79       193.45/week
    (3) From 10/1/79 to 9/30/80       207.82/week
    (4) From 10/1/80 to 9/30/81       222.43/week

The difference between these benefits payable under the D. C. law and what appellant received under the Maryland

award, through September 30, 1981, amounts to over
$13,000. As there is apparently no aggregate maximum
under the D. C. law, the disparity would likely continue, and
widen, for the rest of appellant's life.

Appellant called upon appellee to pay these excess
amounts, and, when appellee refused to do so, appellant filed
in the Circuit Court for Prince George's County a bill for
specific performance and damages seeking to enforce the
policy. Appellant's theory was, and is, that, as a member of
the union, he is a "primary party in interest" to both the
collective bargaining agreement and the insurance policy
purchased by Janco in furtherance of it, and that he is enti-
tled to recover the excess benefits from appellee.

Eventually, after a number of procedural lapses and two
premature appeals, the court finally disposed of the matter
on October 13, 1982, when, in a single order, it (1) granted
appellant's motion for partial summary judgment, and
ordered that appellee pay the difference between the bene-
fits provided by the Maryland workmen's compensation law
and the scale of benefits provided by the D. C. law for the
same percentage of disability, and (2) granted appellee's
motion for partial summary judgment and determined that
appellee's liability was "limited to the schedule of [D. C.]
Workmen's Compensation benefits which existed on the date
of [appellant's] injury. . . ." The apparent effect of this order
was to require appellee to pay only the difference between
$96.80 and $179.04 per week and not the higher amounts
that would be due by reason of the adjustments made to the
"national average weekly wage" after July, 1973.[2]

In an opinion dated April 30, 1982, the court expressed the
view that the decisions of the Court of Appeals in *Cooper v.*

[2] The October 13 order comes perilously close to not being a final judgment.
The order is couched primarily in terms of granting motions for partial
summary judgment, which we have several times held does not suffice as
a final judgment. *See Felger v. Nichols*, 30 Md.App. 278 (1976). To the
extent that it actually determines appellee's liability and orders it to pay
the excess benefits, it does so by unspecific reference to a foreign statute, as
it existed on a date not specifically stated in the order. It is only with some
difficulty and a resort to extraneous documents that one can determine
exactly what amounts appellee was directed to pay.

*Wicomico County, supra,* 278 Md. 596 and 284 Md. 576, precluded using any scale higher than that existing as of the date of injury; and that is the position urged on this Court by appellee. Specifically, both the circuit court in its opinion and appellee in its argument to us point to the *Cooper* Court's acceptance of the principle that "to give effect to a legislative enactment increasing the amount payable to an employee to a sum greater than that payable at the time of the injury would impermissibly alter a substantial term of an existing contract between an employer and an employee (and derivat[iv]ely as to an insurer)." 278 Md. at 600.

We think that appellee has misconstrued and the court has misapplied *Cooper.*

To put this case in its proper perspective, we note first that the issue is not the constitutionality of a retrospective statute, as it was in *Cooper,* but the interpretation of contracts between sophisticated parties — in the one instance Janco and the union and in the other Janco and an insurance company. We are dealing here with contract law, not constitutional law. Second, contracts of the type in dispute here are valid and enforceable. *Nelson v. Victory Electric Works, Inc.,* 227 F.Supp. 404 (D.Md. 1964), *aff'd* 338 F.2d 994 (4th Cir. 1964); *Cox v. American Store Equipment Corporation,* 283 F.Supp. 390 (D.Md. 1968); *Sharp v. Liberty Mut. Ins. Co.,* 463 F.Supp. 104 (D.Md. 1978). It is not improper for an employer who may be operating in two or more States, the District of Columbia being in this instance equivalent to a State, to provide a uniform scale of disability benefits to his employees injured on the job without regard to the happenstance of where — in what State — the injury occurred. Nor is it improper for the employer to purchase insurance against what in some instances will amount to an "excess" liability. Although by dismissing its cross-appeal, appellee has withdrawn the issue from our review, we do note, in passing, that injured employees have been regarded as third-party beneficiaries of such policies and have been permitted to sue directly on them. *See Sharp v. Liberty Mut. Ins. Co., supra,* 463 F.Supp. 104.

What was condemned by the Court of Appeals in *Cooper v. Wicomico County* was a statute which took effect July 1, 1973, providing that any employee permanently and totally disabled as the result of an injury suffered between July 1, 1965 and July 1, 1973 and who, on July 1, 1973 was receiving workmen's compensation benefits for such disability, would be entitled to certain supplemental benefits in excess of what the law permitted when the award was made. Cooper had been injured in 1969. He received an award for permanent total disability in 1971, based on the then-statutory maximum ($45/week with an aggregate limit of $30,000). The 1973 law would have increased that award, retrospectively, to $58/week, with an aggregate limit of $38,397.

In striking down that enactment, the Court adopted the theory that (1) an employer's obligation (and conversely an employee's entitlement) under the workmen's compensation law is part of the employment contract, (2) once that obligation is formally determined by the Workmen's Compensation Commission it becomes vested, and (3) such obligation may not thereafter be adversely affected retrospectively, for to do so would result in the impairment of a contractual obligation. That is what led to the Court's statement, relied upon by appellee and the court below, that "to give effect *to a legislative enactment* increasing the amount payable to an employee to a sum greater *than that payable at the time of the injury* would impermissibly alter a substantial term of an existing contract between an employer and an employee. . . ." 278 Md. at 600. (Emphasis supplied.)

Unlike the situation in *Cooper,* we are not dealing here with a legislative enactment having retrospective effect. What we have instead are contracts under which the employer and his insurer *agreed* to provide benefits "at the same rate of compensation as provided by the Workmen's Compensation law of the District of Columbia. . . ." These contracts, concededly in force at the time of appellant's injury, must be regarded as continuing ones throughout their respective terms. That is to say, the amounts payable

under them are not frozen at a level existing on July 1, 1971, as appellee seems to urge, but instead will adjust in such manner as to bring the total benefits received by the injured employee to the level that would ultimately have been payable had the injury occurred in the District and the claim made to and adjudicated by the D. C. Commission. Any other construction would be absurd, as it would negate the whole purpose of the agreement.

In this case, the 1972 amendments to §§ 906 and 910 of title 33 were already in effect when appellant was injured in July, 1973. Thus, under the *then-existing* D. C. law, appellant would have been entitled to automatic *prospective* adjustments in benefits based upon the annual adjustments made by the Secretary of Labor to the "national average weekly wage." There simply is no question here of retrospective application. *Compare American Stevedores, Inc. v. Salzano,* 538 F.2d 933 (2d Cir. 1976), and *Hastings v. Earth Satellite Corp.,* 628 F.2d 85 (4th Cir.), *cert. den.* 449 U.S. 905 (1980), approving the retrospective application of the 1972 amendments.[3]

Accordingly, we think that the trial court erred to the extent that its order excused appellee from paying the difference between the benefits payable under the Maryland award and the amount payable for the same disability under the D. C. law, including the full amounts prospectively authorized by the 1972 amendments to §§ 906 and 910. We shall therefore reverse that part of its judgment and remand the case for the entry of a clear and proper judgment, in conformance with this Opinion.

> *Judgment affirmed in part and reversed in part; case remanded for entry of judgment in conformance with this opinion; appellee to pay the costs.*

---

**3.** *See also Murphy v. Edward W. Minte Company, Inc.,* No. J-79-1500 (D.Md., Jan. 29, 1981), *aff'd* No. 81-1206 (4th Cir., Oct. 9, 1981), in which an agreement similar to the one before us was construed to require payment of adjusted benefits under the 1972 law even where the injury occurred prior to 1972. We do not cite these unpublished opinions as authority, but only to call attention to them. *See* 4th Cir. Rule 18(d).